JANE C. RICHARDSON, Respondent, v. DAVID L. RICHARDSON et al., as Trustees under an Agreement Made by JANE C. RICHARD-SON, Appellants.

Argued May 17, 1948; decided July 16, 1948.

*Leonard A. Blue, Albert B. Maginnes* and *Hancock Griffin, Jr.,* for appellants. The persons entitled to the intestate property of plaintiff are beneficially interested in the trust. (*Whittemore* v. *The Equitable Trust Co.,* 250 N. Y. 298; *Schoellkopf* v. *Marine Trust Co.,* 267 N. Y. 358; *Engel* v. *Guaranty Trust Co.,* 280 N. Y. 43; *Matter of Scholtz* v. *Central Hanover Bank & Trust Co.,* 295 N. Y. 488; *Doctor* v. *Hughes,* 225 N. Y. 305; *Julier* v. *Central Hanover Bank & Trust Co.,* 272 App. Div. 598.)

*William F. Bleakley, Arthur C. Patterson* and *Collier Platt* for respondent. The grantor has reserved to herself a reversion and the trust is revocable on her direction and consent alone. (Personal Property Law, § 23; *Doctor* v. *Hughes,* 225 N. Y. 305; *City Bank Farmers Trust Co.* v. *Miller,* 278 N. Y. 134; *Fish* v. *Chemical Bank & Trust Co.,* 270 App. Div. 251; *Matter of Gordon* v. *Chemical Bank & Trust Co.,* 272 App. Div.

565; *Willis* v. *Willis*, 265 App. Div. 746; *Matter of Scholtz* v. *Central Hanover Bank & Trust Co.*, 295 N. Y. 488; *Abraham* v. *Abraham*, 245 App. Div. 302; *Julier* v. *Central Hanover Bank & Trust Co.*, 272 App. Div. 598; *Schwartz* v. *Fulton Trust Co.*, 119 Misc. 831; *Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298; *Schoellkopf* v. *Marine Trust Co.*, 267 N. Y. 358.)

CONWAY, J. There has been submitted to the Appellate Division a controversy upon an agreed statement of facts involving an *inter vivos* trust which the settlor now seeks to revoke. We must now determine whether a reversion or a remainder was created by the trust instrument.

On September 30, 1924, plaintiff-settlor executed a trust agreement in which she placed securities of substantial value in trust. She was then unmarried and had she died on that date her mother, Irene P. Currier, would have been her sole next of kin. Four days later, on October 4, 1924, she married David L. Richardson. By the terms of the trust instrument the trustees were directed to pay the income to plaintiff for life and " Upon the death of the party of the first part [plaintiff], the trust herein provided for, shall cease and determine, and the trustees shall thereupon pay over and deliver the corpus of said trust together with any undistributed income thereon, to such person or persons as the party of the first part may designate by her will, or by instrument executed in accordance with the requirements of the State of New York for a last will and testament, and failing such designation, the trustees shall, upon the death of the party of the first part, turn over the principal of said trust estate, together with any undistributed income thereon to Irene P. Currier, the mother of the party of the first part, if she be then living, and if the said Irene P. Currier be not then living, then said principal shall go to such persons as would be entitled to the same under the intestacy laws of the State of New York."

Plaintiff's mother died in 1943, leaving plaintiff as her sole next of kin.

On April 3, 1947, plaintiff executed and served a notice of revocation of the trust upon defendants. At that time her husband and three children (aged 21, 18 and 15) were entitled by law to take her property had she then died intestate.

Section 23 of the Personal Property Law provides: " Upon the written consent of all the persons beneficially interested in

a trust in personal property or any part thereof heretofore or hereafter created, the creator of such trust may revoke the same as to the whole or such part thereof, and thereupon the estate of the trustee shall cease in the whole or such part thereof.''

Defendant trustees urge that plaintiff is not the sole person '' beneficially interested '' in the trust property within the meaning of the statute because she created a remainder to the persons who will be entitled to take her property in the event of intestacy. Plaintiff on the other hand claims that she created only a reversion to herself.

It is now settled that the solution of the problem presented is dependent upon the intention of the settlor as expressed in the trust agreement. (*Doctor* v. *Hughes*, 225 N. Y. 305, 311–312; *Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298, 301–303; *Hussey* v. *City Bank Farmers Trust Co.*, 236 App. Div. 117, affd. 261 N. Y. 533; *City Bank Farmers Trust Co.* v. *Miller*, 278 N. Y. 134, 143; *Engel* v. *Guaranty Trust Co.*, 280 N. Y. 43; *Matter of Scholtz* v. *Central Hanover Bank & Trust Co.*, 295 N. Y. 488.)

We are here concerned with what is sometimes called the doctrine of '' worthier title '' as applied to *inter vivos* transfers. (See 3 Restatement, Property, § 314; 125 A. L. R. 548; 48 Yale L. J. 874; 39 Col. L. Rev. 628, 656, 665.) At common law the direction to transfer an interest in land to the heirs of the grantor — and as the rule was later extended by the courts, an interest in personalty to the next of kin — did not create a remainder in the heirs or next of kin. The direction was disregarded, and it was held that the grantor had expressed merely a reversion to himself. The doctrine arose from the common-law preference to have real property pass by descent rather than purchase. (See 3 Restatement, Property, § 314, pp. 1777–1778; 125 A. L. R. 548–553, 558.) Although the feudal purposes of the rule have long since disappeared, we stated in *Doctor* v. *Hughes* (225 N. Y. 305, 311, *supra*, CARDOZO, J.) that the rule persisted '' at least as a rule of construction, if not as one of property.'' We said that the rule survived at least to the extent '' that to transform into a remainder what would ordinarily be a reversion, the intention to work the transformation must be *clearly expressed*.'' In that case we found '' no *clear expression* of such a purpose.'' (P. 312.) (Emphasis supplied.)

Later in *Engel* v. *Guaranty Trust Co.* (280 N. Y. 43, 47, *supra*) we said (Loughran, J.): " But this rule (as the *Doctor* and *Whittemore* cases show) is with us no more than a *prima facie* precept of construction which may serve to point the intent of the author, when the interpretation of a writing like this trust agreement is not otherwise plain. Inasmuch as for us that rule has now no other effect, *it must give place to a sufficient expression* by a grantor of his purpose to make a gift of a remainder to those who will be his distributees." (Emphasis supplied.)

We have more recently applied the rule in *Matter of Scholtz* v. *Central Hanover Bank & Trust Co.* (295 N. Y. 488, *supra*). There the settlor was a widow whose only child was an adult son, unmarried and without issue. The trust instrument directed the trustee to pay the income to the son for life and on his death to pay the principal to the son's surviving descendants and if none " ' * * * to transfer, assign and pay over the same to the Settlor's next-of-kin under the laws of the State of New York at the date of her said son's death, per stirpes and not per capita.' " (P. 491.) It should be noted that the settlor did not reserve to herself any testamentary power of appointment and did not provide for the contingency that her son might predecease her. In construing the language of that trust instrument as creating a reversion rather than a remainder we said (Lewis, J.):

" We apply here the rule which was decisive in *Doctor* v. *Hughes* (*supra,* p. 312): ' * * * that to transform into a remainder what would ordinarily be a reversion, the intention to work the transformation must be clearly expressed. Here there is no clear expression of such a purpose.'

"Our decision in the present case is not inconsistent with the rulings in *Whittemore* v. *Equitable Trust Co.* (250 N. Y. 298) and *Engel* v. *Guaranty Trust Co.* (280 N. Y. 43) where the language of the trusts involved led this court in each instance to conclude that it was the intention of the grantor to create a remainder rather than to reserve a reversion." (P. 492–493.)

Thus direction to transfer trust property to one's next of kin is insufficient in and of itself to create a remainder. There must be additional factors, i.e., other indications of intention in order that there may be found " sufficient " or " clear expression " of intention on the part of the settlor to create a remainder to his next of kin.

In our decisions we have attached considerable importance to at least three factors which are present in the instant case, viz.: (1) that the settlor has made a full and formal disposition of the *corpus* of the estate, i.e., disposed of the principal on several contingencies other than having it revert to himself, (2) that the settlor has made no reservation of a power to grant or assign an interest in the property in his ·lifetime, and (3) that he has reserved only a testamentary power of appointment.

In *Whittemore* v. *Equitable Trust Co.* (250 N. Y. 298, *supra*) three settlors placed property in trust for two named beneficiaries for life, and on their death the trust estate was to be returned to the settlors in equal shares, but if any of the settlors was then dead his or her share was to be paid to his or her appointee by will, or in default of appointment, to such persons as would take in the event such deceased settlor died intestate. Judge CRANE writing for the court (and referring to the settlors and life beneficiaries in the singular) pointed out (pp. 301–303):

" Taking this agreement in its simplest form, we have a trust created in personal property for the life of the beneficiary. At the death of the life beneficiary, the trustee is directed to do one of three things: pay the principal of the estate to the settlor, if he be alive; or, if he be dead, to pay it as directed in the settlor's last will and testament; or, if the settlor leave no will, to pay it to the persons who would then take under the Statute of Distributions. *No provision is made to pay the principal of the trust estate to the grantee or assignee of the settlor.* \* \* \*

" Reading the instrument as a whole, it is apparent that the settlor intended to make *a complete disposition of all the estate at the time of the making of the instrument,* and did so in the way indicated. The children or next of kin were given a vested remainder, which might be divested by the last will and testament of the settlor; it could not be divested by the deed or assignment of the settlor. In other words, if the settlor, believing he had not conveyed away all of his interests in the property, had attempted to assign or transfer in his lifetime that which he thought he still possessed, and which in law we call a reversion, the deed or transfer would be ineffectual as against his children. *Their interest as next of kin could only be divested or cut off by a last will and testament.* \* \* \*

" To determine, therefore, whether the settlor of the trust in this case simply created a life interest and nothing more, reserving to himself the balance of the interest in the property, we looked to his intention, as expressed in the instrument. If the trust deed had said that upon the death of the life beneficiary the net principal of the trust estate was to be paid over and delivered to the settlor or his next of kin in equal shares, the addition in this place of the words ' next of kin,' would not have been sufficient in all probability to create a remainder. Rather it would indicate that the settlor intended all above a life interest to remain with him as a reversion to be disposed of in any way he pleased. The words would indicate a limitation, not a gift. (*Whittemore* v. *Equitable Trust Co.*, 162 App. Div. 607; *Doctor* v. *Hughes,* 225 N. Y. 305.) But that is not this case. Here we have something more. The settlor, as above stated, makes rather full and formal disposition of the principal of the trust estate in case he dies before the life beneficiary. The words used, as already explained, indicate an intention to give a remainder to the spouse and children, as the case may be, subject to change by the settlor's will. The creator of the trust reserves power of disposition *only by will*; he does something more than merely set up a trust for a life beneficiary; he disposes of the property at the termination of the life interests in case of his previous death. * * * " (Emphasis supplied.)

Later in *Hussey* v. *City Bank Farmers Trust Co.* (236 App. Div. 117, affd. 261 N. Y. 533, *supra*) we followed the *Whittemore* case (*supra*) in holding that a remainder had been created, and again gave much weight to the fact that there was a complete disposition of the trust estate with a vested remainder to the next of kin of the settlor which might be divested by the will of the life beneficiary but could not be divested by grant or assignment. There the testamentary power was reserved to the life beneficiary, rather than the settlor, but we considered that fact unimportant. The trust was set up by the settlor immediately prior to his marriage and provided for the income to be paid to the settlor's wife during her life. Upon her death the principal was to be distributed to (a) such persons as she might direct by will, and failing such disposition (b) to the settlor if living, and if not living (c) to those persons who at the time would be the next of kin of the settlor according to the laws of the State in which the settlor might be a resident at the time of his death.

In *Engel* v. *Guaranty Trust Co.* (280 N. Y. 43, *supra*) the trustee was directed to pay the income to the settlor for life and upon his death to pay the corpus to the settlor's wife if she survived him, and if not to the persons he might designate in his will, and in the event of a failure of valid appointment, to the persons entitled to his intestate property. The trustee was also authorized to make payments out of principal to the settlor during his life not to exceed an aggregate of $15,000. In reversing the Appellate Division which had held that a reversion was created, we said (LOUGHRAN, J., p. 46): "We think the reasoning of our opinion in *Whittemore* v. *Equitable Trust Co.* (250 N. Y. 298) commits us to just the opposite conclusion. There the question was whether a trust agreement reserved a reversion to the settlors or created remainders in their distributees. We held the latter alternative was the one intended. The chief reason for that view was the circumstance that the only provision which the settlors made for control by them of the trust principal gave them no power *save that of testamentary disposition thereof.* (Id. 301,303.)" (Emphasis supplied.)

Concerning that particular instrument we said (p. 47): "The instrument now before us likewise fails to provide for an assignment of the trust principal by the grantor. Its terms, moreover, admit of exercise of the reserved power of testamentary appointment only in the event of the grantor's survivorship of the remainderman, Margaret V. Engel. Significant, too, is the omission of any provision for return of the trust principal to this grantor beyond the $15,000 which he expressly retained the right to draw down. In this last aspect (though the total value of the *corpus* does not appear), the purpose of the grantor fully to divest himself of any other reversionary interest in this trust is clearer to a degree than was the like intent of the settlors which the court found in the *Whittemore* case — for there the settlors were to have the principal again on their survival of both life beneficiaries."

Then after referring to the rule of *Doctor* v. *Hughes* (225 N. Y. 305, *supra*), and stating that it must give way to a sufficient expression by the grantor of his intention to make a gift of a remainder to his distributees (quoted *supra* at p. 139), we said (p. 47): "We find in the present instance an adequate disclosure by the trust agreement of a purpose in the mind of this

grantor to vest his presumptive heirs with rights which it would be beyond his power to defeat, *except by testamentary provision.''* (Emphasis supplied.)

As in the above cases, the settlor here made a full and formal disposition of the principal of the trust fund. She reserved no power to grant or assign any part of the trust property in her lifetime. Except for the right to name a substitute trustee, the settlor retained no control over the trust property other than by the testamentary power of appointment. The instrument provided that the income be paid to the grantor for life, and upon her death that the corpus be paid to such person or persons as she might designate by will, and failing such designation, to her mother if living, and if not, to the distributees of her intestate property. There is a marked similarity between this disposition and that made in the *Engel* case (*supra*). There, after the life estate to the settlor, the instrument provided for a remainder to the settlor's wife, and then if she died prior to the settlor, he had a power of appointment. The only difference is that here the settlor had an *immediate* power of appointment, i.e., settlor for life, power of appointment by settlor and then failing its exercise, a remainder to the mother. In the *Engel* case there was an immediate *remainder* to the wife after the life estate of the settlor, and the settlor had a power of appointment only if he survived his wife. Thus although the power of appointment here is more immediate than in the *Engel* case, with the result that the mother's remainder here was more contingent than the wife's remainder in that case, we do not believe that any different intention is indicated on the part of the settlor as to *her* interest or the interest which she intended to give her next of kin. She provided for a testamentary power of appointment *only,* and, since we have presented to us the question of her intention, if we are to follow the reasoning in the *Whittemore* and *Engel* cases (p. 301), we must assume that she believed she had created a remainder in her mother or in case of her mother's death in her next of kin and had reserved the power of appointment to defeat both those alternative remainders. Had she intended to create a reversion the power would have been superfluous. (See 39 Col. L. Rev. 628, 665.) She had a complete plan of disposition which would operate as life income to herself with alternative remainders. She had power to change it, but only by *affirmative* act and then only by *testamentary* change.

Another factor which points to a remainder and which was relied upon to some extent in the *Engel* case (*supra*) is the failure of the settlor to provide for the return of the principal or any part thereof to herself upon any contingency. In this respect the case is stronger than the *Whittemore* and *Hussey* cases (*supra*) where in each case, despite a provision that the corpus be paid to the settlor in a particular event, we construed the instrument as creating a remainder.

To summarize, therefore, we believe the settlor evidenced her intention to give a remainder to her next of kin because she (1) made a full and formal disposition of the principal of the trust property, (2) made no reservation of a power to grant or assign an interest in the property during her lifetime, (3) surrendered all control over the trust property except the power to make testamentary disposition thereof and the right to appoint a substitute trustee, and (4) made no provision for the return of any part of the principal to herself during her lifetime.

The following cases are in accord with the foregoing and were decided for the reasons indicated:

In *City Bank Farmers Trust Co.* v. *Miller* (278 N. Y. 134, *supra*, FINCH, J.) there was involved a trust set up by an actress who feared her own extravagance. It provided for the return of the principal to her if she lived long enough. We considered that the alternative disposition of the balance of any remaining principal in the event of her earlier death was merely the creation of a reversion. (P. 143.) In that case we cited *Berlenbach* v. *Chemical Bank & Trust Co.* (235 App. Div. 170, affd. 260 N. Y. 539). There another performer (a professional boxer) was involved who had set up a trust primarily for his own benefit, he being the only named beneficiary, with provision for the return of the principal to him at the expiration of a twenty-year period. In addition, the trustee was not to be permitted to sell or exchange the securities or invest or reinvest the proceeds of a sale thereof without the settlor's consent. The Appellate Division found that the instrument evidenced no intent on the part of the settlor to divest himself of his property but that he erected the trust for his own benefit. (P. 173.)

In *Guaranty Trust Co.* v. *Armstrong* (268 App. Div. 763, affd. 294 N. Y. 666) there was no present interest created in third

persons. The settlors, husband and wife, had power to terminate the trust at any time during their joint lives and there was no relinquishment of complete control of the corpus by the settlors or the survivor of them. Thus the surviving wife had a reversion in *that portion of the corpus* of the trust contributed by her. (See *Culver* v. *Title Guar. & Trust Co.*, 296 N. Y. 74, at p. 78, CONWAY, J.)

We have not stressed *Schoellkopf* v. *Marine Trust Co.* (267 N. Y. 358, LEHMAN, J.) which is cited frequently by defendants in their brief. Although that was another case where the trust deed provided for a testamentary power of appointment (to be exercised by a life tenant), and we held that a *remainder* was intended, Judge FINCH writing for the court in the *Miller* case (278 N. Y. 134, *supra*) distinguished it on the ground that in making the gift to the next of kin, the settlor varied the ordinary line of intestate succession and thus indicated an intention to create a remainder in the class designated. However, more recently in *Matter of Scholtz* v. *Central Hanover Bank & Trust Co.* (295 N. Y. 488, *supra*) and *Julier* v. *Central Hanover Bank & Trust Co.* (272 App. Div. 598, motion for leave to appeal denied 297 N. Y. 1036), the designation of a date other than that of the settlor's death as the date for determining his next of kin, so that a class of persons was described which was different from the ordinary class of intestate distributees, was not considered sufficient to indicate an intention to create a remainder.

The *Schoellkopf* case (*supra*) in point of time followed the *Whittemore* (250 N. Y. 298, *supra*) and the *Hussey* (216 N. Y. 533, *supra*) cases and preceded the *Engel* (280 N. Y. 43, *supra*) case. Those four cases demonstrate the growth of the doctrine that it is the intention of the grantor to create a remainder rather than a reversion which is to control and they indicate clearly the factors which, when present, evidence the fact that a remainder was intended as a legal conclusion.

The judgment of the Appellate Division should be reversed and judgment directed in favor of the defendants denying plaintiff the right to cancel the trust agreement, without costs.

LOUGHRAN, Ch. J., LEWIS, DESMOND, THACHER, DYE and FULD, JJ., concur.

Judgment reversed, etc.