MAUD C. HOPE, Plaintiff, *v.* UNITED STATES TRUST COMPANY OF NEW YORK et al., Defendants.

First Department, December 16, 1952.

*Francis A. Booth* of counsel (*Morris & McVeigh,* attorneys), for plaintiff.

*William S. Gaud, Jr.,* of counsel (*David L. Frothingham* with him on the brief; *Carter, Ledyard & Milburn,* attorneys), for defendants.

DORE, J.   In this submission of controversy, under sections 546 to 548 of the Civil Practice Act, the question is whether the settlor of an *inter vivos* trust can revoke the trust in part to the extent of $50,000 under section 23 of the Personal Property Law, providing for revocation on the written consent of all persons beneficially interested.   By the terms of the trust, plaintiff, settlor, concededly retained the power to withdraw $50,000 from the corpus of the fund but that amount had already been withdrawn and paid to the settlor on her request and direction before the present attempted partial revocation and that prior withdrawal of $50,000 pursuant to the terms of trust deed is not the subject of this proceeding.   The issue here is whether plaintiff can withdraw an additional $50,000 and accordingly revoke the trust to that extent.   Specifically the more limited issue is whether the settlor evinced a clear intention to give a remainder to a class of persons who would be the settlor's next of kin at her death.

By the trust deed, the settlor in 1916 gave to the trustees her whole private fortune (except $10,000 in cash, jewelry, furniture and similar personal effects), and directed payment of the income to herself for life; and on her death, if she was survived by a husband she made him life income beneficiary of half the fund; the other half, and on such husband's death the half from which he would have received a life income if he survived her, or the entire principal if he did not, she gave outright on her death as follows:

(1) to settlor's surviving issue per stirpes; or

(2) if no such issue survived her, to the settlor's mother; or

(3) if the mother did not survive her and the settlor had no surviving issue, to such persons as the settlor shall appoint by her last will or an instrument in the nature thereof, that is by a testamentary appointment; or

(4) in default of such appointment by settlor, to the settlor's surviving sisters and brothers; or

(5) if none survive the settlor, to " the persons who would correspond to the Grantor's next of kin  *  *  *  according to the *then* Laws of the State of New York ". (Italics supplied.) The " then " refers to the date of the settlor's husband's death if he survived her or the date of the settlor's death if he predeceased her. The settlor's husband and her mother had both died before the settlor attempted to revoke. The trust deed also expressly provides that: " the said Grantor waives, renounces and releases any right she now has or may hereafter have to rescind, set aside or revoke this trust agreement, and it is one of the conditions upon which the said Trustees accept the trusts herein created that the said Grantor does hereby waive, renounce and release any or all manner of claim or right in or to the Trust Estate mentioned in this deed of trust."

On February 14, 1952, the settlor delivered to the trustee an instrument in writing duly acknowledged revoking the trusts to the extent of $50,000. The settlor's only son of full age and sound mind, her only heir at law and next of kin at the time of the purported revocation, and the settlor's only living brother and sisters all expressly and in proper form, consented to the revocation.

Before delivery of the instrument of revocation, the settlor on February 4, 1952, had executed and delivered to the trustee an instrument in which she released under section 183 of the Real Property Law her general testamentary power of appointment and stated that she " retained " in herself a special power in trust to appoint the trust property to " my Executors or Administrators who may qualify upon my death " and added that the " retained " power in herself was to be deemed an " imperative " power the performance of which might be compelled by her executors and administrators for the benefit of her estate.

Plaintiff, settlor, contends that all persons beneficially interested in the trust have consented to its partial revocation; that no remainder interest was created in those who would be her " next of kin " at her death, but she retained a reversion in herself; and that in any event the limited imperative power created in the release of February 4, 1952, to appoint the property in trust to her own executors and administrators constituted a reversion and cuts off any interest in the persons who might be her next of kin at the date of her death.

Defendants contend that plaintiff does not have the right to revoke the trust even with the consent of her next of kin at time

of revocation as she retained no reversion in herself but by the terms of the trust created a remainder in the class of persons who would be her next of kin at the time of her death, determinable only at that time; that such remainder was not extinguished or cut off by the release dated February 4, 1952; and that plaintiff's action under section 183 was in breach of the contract she had made in the deed.

Direction to transfer trust property to one's next of kin is insufficient *in and of itself* without additional factors to create a remainder (*Richardson* v. *Richardson,* 298 N. Y. 135, 139) and the fact that a trust by its terms is declared to be irrevocable does not prevent the settlor from revoking (*Franklin* v. *Chatham Phenix Nat. Bank & Trust Co.,* 234 App. Div. 369, 371 [1st Dept., Jan. 1932]; *Berlenbach* v. *Chemical Bank & Trust Co.,* 235 App. Div. 170, 171 [1st Dept., April, 1932], affd. 260 N. Y. 539). Each case must necessarily depend upon its own particular facts and above all on the ascertained intention of the settlor of the trust.

By the additional factors or tests set forth in *Richardson* v. *Richardson* (cf. *supra,* pp. 140, 144) indicating a clear expression of an intention to create a remainder, we think we are here constrained to hold that the trust deed before us created a remainder in the persons who may be the settlor's next of kin at the time of her death. Reading this trust deed as a whole, we find that the settlor evinced a clear expression of her intention to make a full and formal disposition of the whole corpus of the estate disposing of the principal on several contingencies other than having it revert to herself; that she made no reservation of any power to create or assign an interest in the property during her lifetime but surrendered all control over all the property except the power to make testamentary appointment thereof and the right to direct that she be paid on demand $50,000 which has already been paid. The settlor reserved no right to amend; she surrendered the right even to appoint a successor trustee °f one of the trustees resigned; and she expressly waived any right to revoke or rescind. In addition, she made an express contract with the trustees, made one of the conditions upon which the trustees accepted the trust, to "waive, renounce and release any or all manner of claim or right in or to the Trust Estate mentioned in this deed of trust"; and this clause may be considered at least on the issue of her ascertained intention. The criteria set forth in the *Richardson* case to aid in determining if a remainder was created are all found here and under the rule in that case the stipulated facts herein compel

the finding of an intention to create a remainder in the settlor's next of kin as of the date of her death.

That the settlor reserved the right to draw down a sum not exceeding $50,000 does not, as plaintiff claims, afford sufficient basis for distinguishing the *Richardson* case (*supra*). In *Engel* v. *Guaranty Trust Co.* (280 N. Y. 43, 47) the settlor also retained the right to draw down a certain amount of a trust principal; and, with respect to that reserved power of partial revocation, the Court of Appeals said: " Significant, too, is the omission of any provision for return of the trust principal to this grantor beyond the $15,000 which he expressly retained the right to draw down. In this last aspect (though the total value of the *corpus* does not appear), the purpose of the grantor fully to divest himself of any other reversionary interest in this trust is clearer to a degree than was the like intent of the settlors which the court found in the *Whittemore* case — for there the settlors were to have the principal again on their survival of both life beneficiaries." The *Engel* case is cited with approval in the *Richardson* opinion.

We also hold that the remainder created in the trust deed was not destroyed by plaintiff's release of February 4, 1952, under section 183 of the Real Property Law or by the limited mandatory power created in such release. Defendants contend that section 183 was added in 1943 to enable the holder of a power of appointment to take advantage of an amendment to the Federal Internal Revenue Code adopted in 1942 permitting such holder through the release of the power to exclude from his estate for Federal estate tax purposes the property over which he held power of appointment.

Defendants point out that section 183, passed in 1943, was expressly made applicable to releases theretofore delivered on or after July 1, 1942, so as to permit holders of such powers to take full advantage of the Federal amendment. Irrespective, however, of this claimed primary purpose of the statute and without deciding that the statute is restricted only to such purpose or cases, we think the trust deed before us does not permit plaintiff to do what she attempted by the release in 1952. In this case plaintiff, as settlor, reserved to herself only a general power to appoint by will, and of course she would have the right to release that power under section 183 (applicable to personal as well as real property) just as any third person would to whom she might have given such power; but in the light of the terms of the trust deed herein above noted, and the rule in the *Rich-*

*ardson* case (*supra*), she did not have the right in such release also to give herself what she had not retained when the trust deed was made; namely, the power *during her life* to cut off remainders in the next of kin as of her death, and thus regain what she had previously and expressly renounced; viz., any claim to the trust corpus during her own lifetime. If she now claims such right by the limited power in trust that she in 1952 made mandatory in favor of her own estate, it is not because she " retained " it; it is because during her lifetime, thirty-six years after the deed was delivered and after she had renounced any retention of interest in herself in the principal, that she attempted to *create* such right by the written release and limited mandatory power. Under the particular facts here disclosed, we think section 183 was not intended to enable plaintiff on the basis of her own unilateral action during her lifetime to convert a remainder to others, her next of kin at her death, into a reversion for herself or her estate.

In this case it can be said of the settlor what the Court of Appeals said of the settlor in the *Richardson* case (*supra*, p. 143): " She had a complete plan of disposition which would operate as life income to herself with alternative remainders. She had power to change it, but only by *affirmative* act and then only by *testamentary* change." (Italics in original.)

The trust has not been validly revoked. Judgment should be entered in defendants' favor on the merits but without costs.

PECK, P. J., COHN and CALLAHAN, JJ., concur.

Judgment is directed in defendants' favor on the merits, without costs. Settle order on notice.