SUZAN TANTLEFF TRUSTS, et al., Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.

Civ. No. 95–1220 (TFH).

United States District Court, District of Columbia.

July 12, 1996.

Stephen F. Owens, Jr., Falls Church, VA, for Plaintiffs.

Thomas Holtzman, FDIC—Legal Division, Washington, DC, for Defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

In this action, the plaintiffs seek a judicial determination that they are owed additional deposit insurance coverage for trust assets lost when a federally insured bank was placed in receivership. Having carefully reviewed the parties' cross-motions for summary judgment, the Court will deny the plaintiffs' motion and grant the defendant's motion.

## I. BACKGROUND

The plaintiffs, trustees and beneficiaries of three trusts, have brought suit against the Federal Deposit Insurance Corporation ("FDIC") in its capacity as insurer of the bank in which the trust assets were deposited. When the bank was placed in receivership and the plaintiffs attempted to recover the trust assets from the FDIC, a dispute arose as to the appropriate amount of deposit insurance coverage on the trusts. The scope of coverage depends upon whether the trusts are properly characterized as revocable or irrevocable. If the trusts are determined to be revocable, they may be entitled only to the $100,000 deposit insurance coverage already paid by the defendant. If the trusts are found to be irrevocable, they may be entitled to additional coverage as to each beneficiary.

The facts are undisputed and are found in the parties' joint Stipulation of Undisputed Facts ("Stip."). On June 24, 1985, Suzan Tantleff established three trusts for the benefit of her children and grandchildren. At that time, Tantleff placed $2,500.00 in each of three money market accounts at American Commerce National Bank of Anaheim, California ("ACNB"). The trust instruments were re-executed in 1992.

The provisions of the trust instruments were identical except that each trust named a different life beneficiary—one each of Suzan Tantleff's three children. Each life beneficiary was entitled to the net income of the respective trust estate for life. Upon the death of the life beneficiaries, their issue, Suzan Tantleff's grandchildren, were to receive the balance of the principal. Tantleff's son Robert was named trustee of each of the three trusts.

The parties' disagreement centers on two provisions in the trust instruments. Section 2.3, upon which the plaintiffs rely, declared the trusts to be irrevocable:

The Settlor hereby declares and acknowledges that this Trust is irrevocable, and that she has been so advised. Neither the

trustee, nor the Settlor, nor any other person shall have the right to revoke, alter or amend this Agreement and Declaration of Trust. The Settlor renounces, relinquishes and disclaims any reversionary or remainder interest in the Trust Property.

(Stip. Ex. A, B, and C.) However, the defendant points out that § 2.2 reserved in the settlor the right to withdraw the trust principal without limitation:

> The Settlor may withdraw part or all of the Trust principal at any one time, or from time to time, upon her request, and the same shall be distributed to such person or persons, and in such manner as the Settlor may from time to time specify. The decision of the Settlor as to the amount of distribution and the allocation shall be final and binding on all persons.

*Id.* On June 25, 1985, the day after the trusts were established, an ACNB officer wrote a letter to Robert Tantleff stating that the trusts were irrevocable. (Stip. Ex. H.) The plaintiffs subsequently filed income tax returns in the trust names.

When the Office of the Comptroller of the Currency ("OCC") seized the ACNB in April 1993, the three trusts held a total of $692,759.29 on deposit. The FDIC was appointed receiver. After initially deeming the trusts irrevocable, the FDIC ultimately revised its determination and characterized the trusts as revocable based on the language of § 2.2. Pursuant to its regulations governing deposit insurance coverage of revocable trusts, the FDIC aggregated the accounts and made one $100,000 insurance payment on the entire group of assets. Plaintiffs subsequently filed a claim with the FDIC for the remaining amount and received a *pro rata* share of the receivership estate—comprised of the aggregated remaining assets of the ACNB—totaling $353,165.99. These payments left $239,593.30 of the trust assets unrecovered.

Plaintiffs filed a petition for review in the United States Court of Appeals for the District of Columbia Circuit. By agreement of the parties, a consent order was entered transferring this action to the United States District Court for the District of Columbia.[1]

## II. ANALYSIS

The plaintiffs claim that the trusts are irrevocable and that each account is eligible for separate insurance coverage. In the alternative, they seek to estop the FDIC from asserting that the trusts are revocable. Both parties have moved for summary judgment. In order for the Court to grant summary judgment under Federal Rule of Civil Procedure 56, the moving party must demonstrate that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering the summary judgment issue, the Court must view all of the evidence in the light most favorable to the plaintiffs. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Even after examining the undisputed evidence in the light most favorable to the plaintiffs in this case, the Court concludes that the applicable law requires it to deny the plaintiffs' motion for summary judgment and grant the defendant's motion for summary judgment.

### A. Statutory and Regulatory Authority of the FDIC

The FDIC is authorized to "insure the deposits of all insured depository institutions." 12 U.S.C. § 1821(a)(1)(A). The statute provides coverage of up to $100,000 per depositor. 12 U.S.C. § 1821(a)(1)(B). In order to determine the total amount of insurance coverage due a depositor, the FDIC

---

1. Pursuant to 12 U.S.C. § 1821(f), jurisdiction to review an FDIC deposit insurance claim determination is properly in the United States Court of Appeals only where regulations have been promulgated establishing procedures for the resolution of disputed claims. Because the FDIC has not established such procedures, the proper forum is the United States District Court. 12 U.S.C. § 1821(f)(3)(B); *Callejo v. RTC,* 17 F.3d 1497 (D.C.Cir.1994). Thus, this action was transferred under the authority of 28 U.S.C. § 1631.

must aggregate the amounts of all deposits in the bank which are maintained by a depositor in the bank in the "same right and capacity" for the depositor's benefit, regardless of the name on the account. 12 U.S.C. § 1821(a)(1)(C); 12 C.F.R. § 330.3(a).

■ The FDIC's deposit insurance coverage regulations differentiate between revocable trusts and irrevocable trusts. If the settlor of a group of trusts seeks the protection of $100,000 worth of coverage per beneficiary, rather than the more narrow protection of $100,000 worth of aggregate coverage per settlor, the settlor faces more stringent requirements with revocable trusts than with irrevocable trusts. Revocable trusts are protected by individual beneficiary coverage if the trusts meet three requirements. 12 C.F.R. § 330.8(a). First, qualified beneficiaries are limited to spouses, children and grandchildren. *Id.* Second, for a beneficiary to obtain coverage, he or she must be "specifically named in the deposit account records of the insured depository institution." *Id.* Finally, the account must "evidenc[e] an intention" of the settlor that the funds "shall belong" to the beneficiary upon the owner's death. *Id.* Interests which are "too contingent" do not meet this requirement. *Lambert v. FDIC*, 847 F.2d 604, 608 (9th Cir. 1988).[2]

By contrast, irrevocable trust accounts are provided with coverage up to $100,000 as to each beneficiary as long as the trust interests are "non-contingent." 12 C.F.R. § 330.11(a). A trust interest is noncontingent if it is "capable of determination without evaluation of contingencies" except for those covered by present worth or life expectancy tables used by the Internal Revenue Service. 12 C.F.R. § 330.11(c)(2).

A trust interest qualifies as an irrevocable trust if it is an "irrevocable express trust . . . created either by written trust instrument or by statute." 12 C.F.R. § 330.11(c)(1). Any

interest retained by the settlor is not included in the coverage of irrevocable trusts. *Id.*

## B. Revocability

■ The parties disagree as to which body of law is applicable to the revocability question. The plaintiffs assert that state law should control, and the defendant argues in favor of applying federal law. Both parties base their arguments on the same FDIC regulation, which states that

> while ownership under state law of deposited funds is a necessary condition for deposit insurance, ownership under state law is not sufficient for, or decisive in, determining deposit insurance coverage. Deposit insurance coverage is also a function of the deposit account records of the insured depository institution, of recordkeeping requirements, and of other provisions of this part, which, in the interest of uniform national rules for deposit insurance coverage, are controlling for purposes of determining deposit insurance coverage.

12 C.F.R. § 330.3(h).

It is unnecessary for the Court to resolve the parties' disagreement, because the trusts are revocable under either New York law[3] or federal law. Under the general law of trusts, "a statement that the trust is intended to be irrevocable will control, *unless it is contradicted by other terms of the trust.*" George G. Bogert, *The Law of Trusts & Trustees* § 1000 (rev. 2d ed. 1982) (footnotes omitted) (emphasis added).

■ This principle is consistent with New York law. There the revocability question is governed by whether the trusts create a remainder in the beneficiaries, which is irrevocable, or a reversion in the settlor, which is revocable. *Kolb v. Empire Trust Co.*, 280 A.D. 370, 113 N.Y.S.2d 550, 552 (1952). Courts determine what type of interest has been created by assessing the intent of the settlor based on the terms of the whole

---

2. Where it appeared that contingencies inherent in the trust arrangement could prevent the beneficiaries from receiving any part of the trust estate upon the death of the depositor, the Ninth Circuit found reasonable the FDIC's conclusion that the trust agreement did not satisfy the third prong of this test. *Lambert,* 847 F.2d at 609.

3. Section 6.9 of the trust instruments indicates that New York law governs the trust formation and administration.

instrument. *In re Burchell's Estate*, 299 N.Y. 351, 87 N.E.2d 293, 296–97 (1949); *Richardson v. Richardson*, 298 N.Y. 135, 81 N.E.2d 54, 60 (1948). The Court of Appeals established four factors to guide New York courts in determining the intent of the settlor based on the trust provisions, holding that a settlor evidenced her intention to give a remainder to her next of kin because she (1) made a full and formal disposition of the principal of the trust property, (2) made no reservation of a power to grant or assign an interest in the property during her lifetime, (3) surrendered all control over the trust property except the power to make testamentary disposition thereof and the right to appoint a substitute trustee, and (4) made no provision for the return of any part of the principal to herself during her lifetime.

*Richardson*, 81 N.E.2d at 59.

■ In this case, § 2.2 of the trust instruments puts no limitation on the amount of principal the settlor may invade. This power is in contravention of the fourth prong of the *Richardson* test[4] which requires that the settlor make no provision for the return of any part of the principal to herself during her lifetime. The plaintiffs point out that a *limited power* in the settlor to demand part of the principal for his or her support and maintenance is "distinct from a power to revoke." Bogert, *supra* § 1000; *McKnight v. Bank of New York & Trust Co.*, 254 N.Y. 417, 173 N.E. 568, 569 (1930). Indeed, in New York, a settlor's conditional right to principal, subject only to the discretion of the trustee, does not violate the fourth prong of the *Richardson* test and thus creates an irrevocable trust. *Robinson v. Marine Midland Trust Co.*, 37 A.D.2d 753, 323 N.Y.S.2d 219, 220 (1971).

■ However, even where a trust provided for the return of a limited amount of principal to the settlor, a New York court applying the *Richardson* test held that the settlor intended to create a revocable trust by retaining other forms of control over the trust corpus. *Kolb*, 113 N.Y.S.2d at 552. In that case, the court determined the settlor's intent from the terms of the trust. Likewise, Suzan Tantleff's intent must be garnered from all the provisions of the trusts. Her access to the trust corpus is not subject to the discretion of the trustee, nor is it limited to her support and maintenance. Moreover, she retained the right to "fully withdraw all funds and thus terminate the 'trust' *de facto* " which has been held to be inconsistent with an intention to create an irrevocable trust. *Ward v. Saranac Lake Fed. Savings & Loan Ass'n.*, 48 A.D.2d 337, 369 N.Y.S.2d 540 (1975).[5]

In addition, at least one federal circuit has held, without reference to state law, that a trust is revocable "by its own terms" where the settlors retained a similar unlimited power to withdraw all the principal. *Lambert*, 847 F.2d at 607. *Lambert's* conclusion is consistent with 12 C.F.R. § 330.11(c)(1)'s provision stating that interests retained by the settlor are not part of any coverage of irrevocable trusts. According to the literal terms of the trust, Suzan Tantleff reserved the right to withdraw the entire corpus. By retaining this interest in the principal, she failed to create an irrevocable trust under either the *Richardson* test, as it has been interpreted by New York courts, or the federal common law set forth in *Lambert*. This conclusion finds further support in the FDIC regulations themselves which exclude any interest retained by the settlor from a calculation of deposit insurance coverage. Thus,

---

4. While the Tantleff trusts may violate more than one element of the *Richardson* four-prong test, it is only necessary to evaluate the fourth prong. *In re Decker's Trust*, 13 Misc.2d 121, 177 N.Y.S.2d 598, 601 (1958) (finding that if any of the four *Richardson* requirements is absent from a trust, "there is room to doubt" the settlor intended to create an irrevocable trust.)

5. Contrary to the plaintiffs' claim that the trustee's duty to preserve the trust corpus for the beneficiaries would limit the settlor's power to deplete the principal, where there is no limiting language in the trust instrument, there is no basis for the trustee to maintain an action against the settlor for misappropriating trust funds. The trustee must obey the terms of the trust as to payment of principal. Bogert, *supra* § 811. If the trustee's common-law duty to preserve the trust corpus sufficed to contravene specific withdrawal powers granted to the settlor, there would be no such thing as a revocable trust.

§ 2.2 is clearly inconsistent with an intent to part with ownership of the trust assets, and makes the trusts revocable.

## C. Beneficiary vs. Settlor Coverage

 The Court must now determine the amount of deposit insurance coverage due the plaintiffs under the FDIC regulations governing revocable trusts found at 12 C.F.R. § 330.8.[6] The defendant refers to the conditions for separate beneficiary coverage and makes two arguments that the conditions are not met here. First, the defendant maintains that the beneficiaries are not named in the deposit account records of the ACNB. Second, the defendant claims that the beneficiary interests are too contingent to qualify for separate coverage. Because the trusts fail to meet either one of the conditions, the defendant asserts, the plaintiffs are entitled to only $100,000 worth of coverage.

The 1985 deposit account documents of the ACNB indicating the initial deposit by the settlor do not identify the beneficiaries of each trust. (Stip. Ex. E, F, and G.) They are signed only by the settlor and her son Robert Tantleff, the trustee, and the accounts are held in the trust names. After reviewing the record in this case, it appears that the only bank record which could be construed to identify the beneficiaries is the June 1985 letter from the ACNB bank official to Robert Tantleff. It is not immediately clear whether the letter is a "deposit account record": the FDIC regulations define those records as "account ledgers, signature cards, certificates of deposit, passbooks, corporate resolutions authorizing accounts in the possession of the insured depository institution and other books and records of the insured depository institution . . . ." 12 C.F.R. § 330.1(d). The letter may fit within the "other books and records" clause under a rather broad reading of the regulation.

In any case, assuming *arguendo* that the letter would qualify as a deposit account record, the actual wording of the letter is ambiguous as to the beneficiaries' names. It states that the trusts would "do some estate

planning for the long term benefit of Martin Judick and yourself." (Stip. Ex. H.) Suzan Tantleff's children, the life beneficiaries named in the trusts, are Martin, Judith and Robert. In the letter, the words "Martin Judick" look like an individual's first and last name since it is not separated by a comma and because Judith Tantleff's first name presumably is misspelled as "Judick."

Even allowing a liberal interpretation of the above phrase, at best, the letter indicates only the first names of Robert Tantleff's siblings and the recipient of the letter, Robert Tantleff, as beneficiaries of the three trusts. That reading would require supplementary materials such as the trust instruments themselves, which are not part of the bank records, to conclusively identify the three life beneficiaries. On its face, then, the letter does not identify the life beneficiaries. Likewise, and perhaps more importantly, the settlor's grandchildren are mentioned nowhere in the ACNB's records. The Court finds the relationship between the reference in the letter and the life beneficiaries too attenuated to show that the life beneficiaries were "specifically named in the deposit account records of the insured depository institution" as required by § 330.8(a).

Because the trust accounts do not meet the requirement of § 330.8(a) that the beneficiaries be named in the deposit records, the Court finds that the plaintiffs are not entitled to separate coverage for each beneficiary under that section. Hence, the Court need not reach the defendant's second argument concerning the contingency of the beneficiary interests.

## D. Estoppel

 As an alternative to their argument on the merits, the plaintiffs contend that the FDIC should be estopped from asserting that the trusts are revocable. They ground this assertion in two interrelated theories. Both theories conclude that the FDIC should be bound by the ACNB's representation in the June 1985 letter that the trusts were irrevocable. First, plaintiffs argue that they

---

**6.** The plaintiffs briefed the issue of additional insurance coverage, but appeared to address only the irrevocable trust provisions. In the interest of fairness and completeness, the Court will nevertheless examine the issue as it applies to revocable trusts.

relied on the letter, and that the FDIC is bound by the contents of the ACNB's records. Second, the plaintiffs allege that the government wrongly seized the ACNB in April 1993, thereby prejudicing plaintiffs' rights and creating a duty to abide by the ACNB's representation. Each of these theories will be discussed in turn.[7]

In examining the plaintiffs' first theory, the Court must determine whether the FDIC can be bound by bank representations upon which the plaintiffs relied. The plaintiffs urge the Court to follow the holding of *FDIC v. Harrison*, 735 F.2d 408 (11th Cir.1984). In that case, the FDIC was estopped from seeking a judgment against two guarantors of a note who had relied to their detriment on an FDIC agent's representation that they were not liable on the note. *Id.* at 408–09. Plaintiffs do not address explicitly the most glaring distinction between *Harrison* and this case—the fact that, prior to insolvency, the bank official was not an FDIC agent. There is no reason why the FDIC would be considered to be in an agency relationship with a private party like the ACNB, at least with respect to pre-receivership representations made by the bank. In the plaintiffs' other cited cases, the agency relationship between the defendant and the entity making the representation was clear. *See, e.g., Trout v. Garrett*, 780 F.Supp. 1396, 1425 (D.D.C.1991) (representations made by Department of Justice attorneys); *Meister Bros., Inc. v. Macy*, 674 F.2d 1174 (7th Cir. 1982) (representations made by claims adjustor for the Federal Emergency Management Agency). The plaintiffs do not allege that either the FDIC or one of its agents made a misrepresentation to Tantleff.

In spite of the lack of any agency relationship between the ACNB and the FDIC, the plaintiffs rely upon FDIC regulations and

case law to suggest that the FDIC should nevertheless be bound by the June 1985 letter. The pertinent regulations state that the "FDIC shall presume that deposited funds are owned in the manner indicated on deposit account records of the insured depository institution." 12 C.F.R. § 330.4(a)(1). Congress authorized the FDIC to make "clear and unambiguous" records binding on the depositors "in its sole discretion," even when the records turn out to be incorrect. *Id.; In re Collins Securities Corp.*, 998 F.2d 551 (8th Cir.1993); *Fletcher Village Condominium Ass'n. v. FDIC*, 864 F.Supp. 259 (D.Mass. 1994).[8] The plaintiffs contend that because the FDIC is entitled to rely on the bank records, they as depositors are entitled to the same right of reliance with respect to the June 1985 letter.

Assuming again, as above, that the June 1985 letter would qualify as a "deposit account record" under the regulations, the FDIC is not bound by it. The policies supporting the binding-records rule, when exercised by the FDIC on its own behalf, do not necessarily apply with equal force to depositors. In addition, the FDIC, in its sole discretion, may look behind the records of the failed institution. 12 C.F.R. § 330.4(a)(1). Thus, when the FDIC looked behind the June 1985 letter to the trust instruments themselves to determine whether the deposit accounts were revocable or irrevocable, it was acting within its statutory and regulatory authority. Moreover, case law supports the defendant's assertion that an institution's representations to a depositor do not bind the FDIC as insurer. *Waukesha State Bank v. Nat'l Credit Union Admin.*, 968 F.2d 71, 73–74 (D.C.Cir.1992); *Nimon*, 975 F.2d at 246; *Kershaw v. RTC*, 987 F.2d 1206, 1210 (5th Cir.1993).

7. In support of these estoppel arguments, plaintiffs urge application of the *D'Oench* doctrine, an equitable principle broadly construed by plaintiffs as a federal policy protecting innocent parties in bank failure situations. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The Court must reject this argument at the outset, because this Circuit has held that the *D'Oench* doctrine is preempted by federal statute. *Murphy v. FDIC*, 61 F.3d 34, 38–40 (D.C.Cir.1995).

8. The primary policies supporting the rule are for effective government oversight of the banking system, efficient administration of assets of a failed institution, and to avoid interruption of banking services. *Langley v. FDIC*, 484 U.S. 86, 91–92, 108 S.Ct. 396, 401–02, 98 L.Ed.2d 340 (1987); *Nimon v. RTC*, 975 F.2d 240, 245 (5th Cir.1992); *Gunter v. Hutcheson*, 674 F.2d 862, 865 (11th Cir.1982), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982).

In advancing their second estoppel theory, the plaintiffs argue that "the government" prejudiced plaintiffs' rights by seizing the bank when it was solvent, thereby creating a unique situation which imposed a duty on the FDIC to abide by the ACNB's statements to the plaintiffs. This claim lacks merit. There is no evidence that the OCC acted outside its statutory authority when it seized the bank and appointed the FDIC as receiver. 12 U.S.C. §§ 191, 1821(c)(5). Section 1821(c)(5) lists thirteen alternative grounds for appointment of a receiver by the OCC, including some that make no reference to solvency. *See, e.g.,* 12 U.S.C. § 1821(c)(5)(H)(ii) (statutory or regulatory violations which would weaken institution's condition); 12 U.S.C. § 1821(c)(5)(E) (concealment of institution's records). The plaintiffs themselves allege that the ACNB was seized because of the "continuing wrongful conduct of bank officials." (Plaintiffs' Memorandum in Support of Motion for Summary Judgment, Affidavit at ¶ 14.) There is no evidence that the seizure and receivership were improper in either substance or form. *Cf. Hale House Center, Inc. v. FDIC,* 788 F.Supp. 1309 (S.D.N.Y.1992) (no duty to inform depositors of impending seizure). Consequently, the Court finds that the plaintiffs have not asserted a cognizable estoppel argument against the defendant. Neither the allegations of wrongful seizure nor the plaintiffs' arguments of reliance and agency demonstrates that the FDIC should be bound by the representations of the ACNB.

## IV. CONCLUSION

The plaintiffs are undoubtedly frustrated that they were denied the more expansive insurance coverage to which they would have been entitled had the instruments in fact carried out the alleged intent of Suzan Tantleff. If indeed she intended to part irrevocably with ownership of the funds, the trust instruments should not have provided her with unconditional access to the funds absent a limiting provision. For example, under New York law, trusts can be irrevocable if they are properly drafted to allow the settlor limited access to the principal for her support and maintenance. Merely inserting boilerplate irrevocability language into the

trust instruments will not erase the effect of substantive provisions to the contrary. For these reasons, and because the plaintiffs cannot prevail on their equitable estoppel argument, the Court will deny the plaintiffs' motion for summary judgment and grant the defendant's motion for summary judgment. An order will accompany this opinion.