In the Matter of the Application of CELESTINE A. THOMSON, Respondent, to Compel Accounting by Lawyers Trust Company, as Successor Trustee under a Trust Created by CELESTINE A. BURCHELL. FRANK P. NOHOWEL, as Executor of CELESTINE A. GARDNER (Formerly CELESTINE A. BURCHELL), Deceased, et al., Appellants; JOSEPHINE M. BURCHELL et al., Respondents.

ALICE M. B. WORM, Appellant, v. UNITED STATES TRUST COMPANY OF NEW YORK, Respondent.

Argued April 11, 1949 and April 13, 1949; decided July 19, 1949.

*Frank P. Nohowel,* executor-appellant in person, in above-entitled proceeding. I. The appointive power was exercised by will of testatrix. (*Matter of Lynn,* 261 App. Div. 513, 287 N. Y. 627; *Matter of Neil,* 238 N. Y. 138; *Moffett* v. *Elmendorf,* 82 Hun 470, 152 N. Y. 475; *Hutton* v. *Benkard,* 92 N. Y. 295; *White* v. *Hicks,* 33 N. Y. 383; *Matter of Gallien,* 247 N. Y. 195; *Matter of Silsby,* 229 N. Y. 396; *Matter of Buechner,* 226 N. Y. 440; *Lockwood* v. *Mildeberger,* 159 N. Y. 181; *Matter of Title Guar. & Trust Co.,* 195 N. Y. 339; *Fargo* v. *Squiers,* 154 N. Y. 250; *City Bank Farmers Trust Co.* v. *Meyn,* 263 App. Div. 671.) II. The trust indenture creates an estate in reversion.

*Louis J. Merrell* and *Edward I. Goodman* for Horatio S. Gardner, appellant in above-entitled proceeding. I. The very simplicity of the trust structure in the case at bar, with no one but the settlor specifically named to receive any benefits thereunder, indicates clearly the intention of the settlor to reserve a reversion. (*Doctor* v. *Hughes,* 225 N. Y. 305; *Richardson* v. *Richardson,* 298 N. Y. 135; *Matter of Scholtz* v. *Central Hanover Bank & Trust Co.,* 295 N. Y. 488; *Whittemore* v. *Equitable Trust Co.,* 250 N. Y. 298; *Hussey* v. *City Bank Farmers Trust Co.,* 236 App. Div. 117, 261 N. Y. 533; *Schoellkopf* v. *Marine Trust Co.,* 267 N. Y. 358; *Culver* v. *Title Guar. & Trust Co.,* 296 N. Y. 74; *Engel* v. *Guaranty Trust Co.,* 280 N. Y. 43; *Matter of Ogsbury,* 7 App. Div. 71; *Hopkins* v. *Bank of New York,* 261 App.

Div. 465.) II. By use of the words " a trust estate for her own benefit " the settlor has indicated clearly and expressly an intention to create a reversion in the case at bar. (*Matter of McGinnis*, 44 N. Y. S. 2d 932, 268 App. Div. 966; *Matter of Alderdice*, 71 N. Y. S. 2d 84; *Campbell* v. *Beaumont*, 91 N. Y. 464; *Crain* v. *Wright*, 114 N. Y. 307; *Whittemore* v. *Equitable Trust Co.*, 162 App. Div. 607; *Berlenbach* v. *Chemical Bank & Trust Co.*, 235 App. Div. 170, 260 N. Y. 539.) III. The trust provisions in the case at bar are essentially different from those considered in *Richardson* v. *Richardson* (298 N. Y. 135) and nothing in the latter decision is at variance with the conclusion that the settlor here intended to reserve a reversion.

*Robert N. Errington* for John A. Burchell, respondent in above-entitled proceeding. I. The intent of the settlor at the time of the creation of the trust, expressed by the text and import of the instrument, was to set up a complete devisory program, reserving the income to herself, with remainder to her heirs at law and next of kin in default of testamentary appointment. (*Dickey* v. *Goldschmidt*, 60 Misc. 258; *Richardson* v. *Richardson*, 298 N. Y. 135; *Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298; *Engel* v. *Guaranty Trust Co.*, 280 N. Y. 43; *Schoellkopf* v. *Marine Trust Co.*, 267 N. Y. 358; *Fish* v. *Chemical Bank & Trust Co.*, 270 App. Div. 251.) II. The settlor made a full and formal disposition of the corpus of the fund, with no reservation of power to grant or assign, reserving only a testamentary power of appointment. (*Richardson* v. *Richardson*, 298 N. Y. 135; *Schoellkopf* v. *Marine Trust Co.*, 267 N. Y. 358; *Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298.) III. The settlor's surrender of control over the trust property was so complete as to demonstrate an intent to create a remainder. IV. The use of the phrase " A trust estate for her own benefit " in the preamble of the trust deed does not negative the settlor's intention as expressed in the instrument as a whole. (*Whittemore* v. *Equitable Trust Co.*, 162 App. Div. 607; *Berlenbach* v. *Chemical Bank & Trust Co.*, 235 App. Div. 170, 260 N. Y. 539.)

*Walter M. Hinkle, Robert G. Lind* and *Irving I. Goldsmith* for Celestine A. Thomson, petitioner-respondent in above-entitled proceeding. I. The Court of Appeals has, in the case of *Richardson* v. *Richardson* (298 N. Y. 135) finally laid down

the criteria which determine when a settlor intends to create a remainder interest in an *inter vivos* trust indenture. II. The provisions of the trust indenture in the instant case bring it within the criteria of the *Richardson* case, and evidence a deliberate intent by the settlor to create a remainder. (*Berlenbach* v. *Chemical Bank & Trust Co.*, 260 N. Y. 539; *City Bank Farmers Trust Co.* v. *Miller*, 278 N. Y. 134; *Whittemore* v. *Equitable Trust Co.*, 162 App. Div. 607; *Dickey* v. *Goldschmidt*, 60 Misc. 258.) III. Neither the " simple structure " of the trust indenture nor the phrase " for her own benefit " nor the reservation of alleged " managerial rights " evidences an intent to reserve a reversion instead of creating a remainder. (*Guaranty Trust Co.* v. *New York Trust, Co.*, 297 N. Y. 45.) IV. The intent of the settlor must be derived from the trust indenture itself, and cannot be determined by what she said sixteen years later or incorporated in a will executed fifty-two years later. (*City Bank Farmers Trust Co.* v. *Miller*, 278 N. Y. 134; *Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298; *Guaranty Trust Co.* v. *New York Trust Co.*, 297 N. Y. 45; *New York Life Ins. & Trust Co.* v. *Cary*, 191 N. Y. 33.) V. In any event, the will of Celestine A. Gardner contains no language permitting the application of the trust property to general testamentary purposes. (*Fargo* v. *Squiers*, 154 N. Y. 250.)

*Martin Aigner* for appellant in above-entitled action. The trust agreement, dated January 23, 1923, has been validly terminated by the revocation dated December 8, 1948. (*Doctor* v. *Hughes*, 225 N. Y. 305; *Richardson* v. *Richardson*, 298 N. Y. 135; *Matter of Scholtz* v. *Central Hanover Bank & Trust Co.*, 295 N. Y. 488; *Julier* v. *Central Hanover Bank & Trust Co.*, 272 App. Div. 598, 297 N. Y. 1036; *Matter of Gordon* v. *Chemical Bank & Trust Co.*, 272 App. Div. 565; *St. George* v. *Fulton Trust Co. of N. Y.*, 273 App. Div. 516.)

*Robert A. West* for respondent in above-entitled action. I. Determination of the nature of the future interest created by the deed of trust depends upon the settlor's intention as expressed in the deed. (*Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298; *Hussey* v. *City Bank Farmers Trust Co.*, 261 N. Y. 533; *Schoellkopf* v. *Marine Trust Co.*, 267 N. Y. 358; *Engel* v. *Guaranty Trust Co.*, 280 N. Y. 43.) II. The provisions of the

deed of trust indicate an intention to create a remainder interest. (*Richardson* v. *Richardson,* 298 N. Y. 135.)

BROMLEY, J. We are again asked to determine whether a limitation over to the heirs of the grantor in an *inter vivos* conveyance created a remainder in the heirs or left a reversionary interest in the grantor.

The instrument of conveyance in each case is a trust agreement. In Matter of Burchell the question arises in the course of the administration of the estate of the deceased settlor. In Worm v. United States Trust Co. the settlor has attempted to revoke the trust instrument under section 23 of the Personal Property Law by a notice of revocation executed by her alone.

The provisions in each of the two instruments are similar. The settlor conveyed property to trustees who were directed to pay income therefrom to the settlor during her life and upon her death to convey the principal of the trust estate to the persons whom the settlor should appoint in her will, or, in default of appointment, to the settlor's next of kin as in intestacy. In the Burchell case the trust instrument further provided that the settlor, as evidence of her consent and approval, should join in the execution of any conveyance or mortgage of any of the property, or of a lease for a period of more than three years, or of the appointment of a successor trustee or trustees.

The trustees, however, were authorized and empowered to sell, convey or mortgage the real estate and to invest and reinvest the trust funds. In the Worm case the trustee was given full power to manage, invest and reinvest the trust property, except that approval of the settlor's father was required during his lifetime. No power of revocation was reserved in either agreement nor was there any provision for withdrawal of any of the principal of the trust fund.

In each case we reach the conclusion that the future interests limited in the instrument resulted in the creation of valid remainders.

In *Richardson* v. *Richardson* (298 N. Y. 135), decided only last year, we reaffirmed the rule, first announced in *Doctor* v. *Hughes* (225 N. Y. 305), that the nature of the future interest where an estate is limited to heirs of the grantor is dependent upon the intention of the settlor as expressed in the trust agreement. We stated (p. 139): " Thus direction to transfer trust property to

one's next of kin is insufficient in and of itself to create a remainder. There must be additional factors, i.e., other indications of intention in order that there may be found ' sufficient ' or ' clear expression ' of intention on the part of the settlor to create a remainder to his next of kin.'' We tabulated certain additional factors which had been considered of significance in earlier cases in pointing the intention of the grantor to create a remainder. The reservation of only a testamentary power of appointment, together with '' ' full and formal disposition of the principal of the trust estate ' '' (p. 141) and the failure to reserve a power to grant or assign an interest in the property, led us to conclude that the interest limited in that case was a remainder and the settlor's attempt to revoke the instrument was ineffective since presumptive remaindermen were not parties to the revocation.

The trust agreement in the *Richardson* case (*supra*) differed only slightly from those now before us. There, the settlor, then unmarried and her mother, her sole next of kin, directed the trustees named to pay the income to the settlor for life and at her death to pay over the corpus to such person or persons as the settlor should appoint by will, and in default of appointment the principal should be paid over to her mother, but should her mother predecease her the principal was to be paid to her next of kin as in intestacy. Settlor's mother predeceased her and settlor attempted to revoke. The immediate power of appointment, followed by a limitation to a named person rather than a designation of a remainder followed by a power of appointment (cf. *Engel* v. *Guaranty Trust Co.*, 280 N. Y. 43), was not deemed significant enough to warrant an opposite conclusion from that reached in the *Engel* case.

In the instant cases it is true there was no grant of a remainder interest to a named individual and the limitation to the heirs was only upon default in the exercise of the power of appointment. But whether a remainder is created or a reversion left in the grantor is not dependent upon the number of contingent or vested limitations created. A valid gift may be made to a designated class; so also may a valid remainder be created subject to be divested by a reserved power of appointment; and a valid remainder interest may be created though the naming of specific takers is reserved for future announcement under a testamentary power of appointment.

Confusion as to the nature of an estate when that estate is limited to heirs of the grantor arises because of the existence in our modern jurisprudence of remnants of the ancient doctrine. of worthier title (46 Harv. L. Rev. 993). Prior to our decision in *Doctor* v. *Hughes* (225 N. Y. 305, *supra*), a conveyance by a grantor with a limitation over to his heirs was said to be governed by that doctrine, under which a limitation over to a grantor's heirs resulted in an automatic reversion in the grantor and nullified the limitation over.

The doctrine had its origin in the feudal custom of awarding certain valuable incidents to the overlord upon the descent of property held by a feoffee. These incidents did not accrue if the property was acquired through purchase, and, in order to obviate this means of curtailing the payment of incidents, title by descent was declared to be more worthy than title by purchase. If a gift over might pass to an heir by descent rather than by gift, he took his title through inheritance. Although the reason for the rule disappeared with the disappearance of feudal customs, the rule itself remained as part of the common law. Its effect was to deny the intent of the grantor and to cut out entirely the limitation to the heirs, thus accelerating the reversion which remained in the grantor. (See Warren, A Remainder to the Grantor's Heirs, 22 Tex. L. Rev. 22; *Matter of Brolasky,* 302 Pa. 439). The doctrine was abolished in England in 1833 by a statute which allowed an heir to take title as purchaser where property passed to him by devise (3 & 4 Wm. IV, ch. 106, § 3). In this country the doctrine remained as part of the common law but has been principally applied where a limitation is made to heirs under an *inter vivos* conveyance. The intent of a grantor is said to be the controlling element and the common-law rule is not applied where the grantor clearly indicated his intention to grant a remainder to his heirs (3 Restatement, Property, § 314). *Doctor* v. *Hughes* (225 N. Y. 305, *supra*) announced that such was the rule of this State. We said in that case (pp. 311–312): "in the absence of modifying statute, the rule persists to-day, at least as a rule of construction, if not as one of property. * * * We do not say that the ancient rule survives as an absolute prohibition limiting the power of a grantor. * * * There may be times, therefore, when a reference to the heirs of the grantor will be

regarded as the gift of a remainder, and will vest title in the heirs presumptive as upon a gift to the heirs of others. * * * But at least the ancient rule survives to this extent, that to transform into a remainder what would ordinarily be a reversion, the intention to work the transformation must be clearly expressed.''

The use of the old doctrine as a rule of construction results in either (1) a shift from an absolute rule against remainders to heirs of grantors to a rule that the grantor must expressly indicate his intention to create a remainder in his heirs; or (2) a presumption in favor of reversions which may be rebutted by indication of the grantor's contrary intent gathered from the instrument as a whole. The practice adopted in the majority of States falls into the second classification. Some few States have entirely dispensed with the doctrine, allowing the gift of the grantor to take effect as a remainder. This has been accomplished by applying a statute abrogating some other ancient rule of property. For instance, a statute abrogating the rule in *Shelley's* case (1 Coke Rep. 93b; 76 Eng. Rep. 206) has been said to apply to a situation involving the doctrine of worthier title (*Gray* v. *Union Trust Co.*, 171 Cal. 637; *Bixby* v. *California Trust Co.*, 190 P. 2d 321 [Cal.]). In other States the doctrine has on occasion been rejected (*Mills* v. *Mills,* 275 Ky. 431; *Kennedy* v. *Rutter,* 110 Vt. 332; *Norman* v. *Horton,* 344 Mo. 290). It has been said that the doctrine is '' more quaint than sensible '' and has '' no place under other than a feudal system '' (Nossaman, Trust Administration and Taxation, § 303, p. 285). Under the proposed Uniform Property Act, not yet adopted by any State, the doctrine is completely dispensed with by providing that a conveyance to heirs or next of kin operates by purchase and not by descent (Proposed Uniform Property Act, § 15; 9 U. L. A. 613, 616).

It is clear from the cases in this State since *Doctor* v. *Hughes* (225 N. Y. 305, *supra*), as admirably analyzed in *Richardson* v. *Richardson* (*supra*), that, despite the language in that opinion that a reversion exists unless there is clear evidence to the contrary, the rule has been less limited in application. Where a clear intent exists, there is no problem in construing the instrument, since the doctrine no longer exists as a rule of property. But where the grantor's intent is not expressed in unmistakable language, the rule comes into play. Then we look to the instrument for those indicia deemed significant in arriving at the

intent of the grantor. In the first of the line of cases following *Doctor* v. *Hughes* (*supra*), (*Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298), we applied the rule of construction in the manner indicated in the second interpretation above. We discovered the intent of the grantor from other factors, as shown by the instrument, in order to give full effect to the words of limitation.

While we have not yet adopted a rule, either by statute or judicial construction, under which language limiting an interest to heirs is unequivocally given its full effect, the presumption which exists from the use of the common-law doctrine as a rule of construction has lost much of its force since *Doctor* v. *Hughes* (*supra*). Evidence of intent need not be overwhelming in order to allow the remainder to stand. Whether the rule should be abrogated completely is a matter for the Legislature.

The instant cases furnish sufficient additional indications of the settlor's intent to justify our giving effect to the language of the instrument limiting an estate to the grantor's heirs. Not the least among those indications was the reservation of a testamentary power of appointment as the sole control over the subsequent disposition of the corpus of the trust estate. We do not think that the reservation of a veto power over certain conveyances, as provided in the trust instrument in Matter of Burchell, was sufficient to give the settlor control over the trust property where the trustees otherwise had full power to invest and reinvest the trust funds. The fact that the trust agreement reserved a power of appointment is evidence that the settlor believed she had created an interest in the property on the part of others and reserved the power in order to defeat that interest or to postpone until a later date the naming of specific takers (*Whittemore* v. *Equitable Trust Co.*, 250 N. Y. 298, *supra; Engel* v. *Guaranty Trust Co.*, 280 N. Y. 43, *supra; Sands* v. *Old Colony Trust Co.*, 195 Mass. 575; *Fehr Brewing Co.* v. *Johnston*, 30 Ky. L. 211). Where we have held that a reversion was intended although a testamentary power of appointment was reserved, the instruments have provided that the trust principal would revert to the grantor upon some contingency (*Berlenbach* v. *Chemical Bank & Trust Co.*, 235 App. Div. 170, affd. 260 N. Y. 539; *City Bank Farmers Trust Co.* v. *Miller*, 278 N. Y. 134) or that the grantor retained

control over the principal (*Guaranty Trust Co.* v. *Armstrong,* 294 N. Y. 666).

In analyzing an instrument and attempting to explore the almost ephemeral qualities which go to prove the necessary intent, many single factors may be considered. Some considered significant in one case may be deemed minimal in another, since their effect may be counteracted by the presence of other factors. It is impossible to set up absolute criteria to serve as a measuring standard for all cases. In the last analysis, the ultimate determination rests on the particular instrument under consideration, aided by the rule which has grown out of the old common-law doctrine and developed over a long line of cases as a rule which allows the language of the instrument creating a remainder to take effect provided some additional evidence pointing the intent of the grantor is present to buttress the language which would create the remainder.

The order in Matter of Burchell should be affirmed, with costs to all parties appearing separately and filing separate briefs, payable out of the fund; the judgment in Worm v. United States Trust Co. should be affirmed, without costs.

FULD, J. (dissenting). In each of these cases, the trust agreement provided, in essence, that the trustees to whom the property had been conveyed were to pay the income to the settlor for life, and that, upon her death, the principal was to be paid over by the trustees to such persons as the settlor might appoint by will, or, in default of such appointment, to the settlor's heirs at law and next of kin as in intestacy. In addition, in Matter of Burchell, the settlor reserved to herself the right and power to approve and join in the execution of any conveyance or mortgage of the property, of any lease for a period of more than three years or of the appointment of a successor trustee or trustees.

The rule has long been established that " to transform into a remainder what would ordinarily be a reversion, the intention to work the transformation must be clearly expressed." (*Doctor* v. *Hughes,* 225 N. Y. 305, 312; see, also, *Richardson* v. *Richardson,* 298 N. Y. 135, 139; *Matter of Scholtz* v. *Central Hanover Bank & Trust Co.,* 295 N. Y. 488; *City Bank Farmers Trust Co.* v. *Miller,* 278 N. Y. 134.)

Had the agreement not reserved to the settlor a power to appoint by will, no one would question or dispute that a reversion had been created. To find, in the retention of such a power — to appoint by will — the " clearly expressed " intention which is essential to transform a reversion into a remainder, impresses me as illogical and unreal. Even without such a reservation, the property would have passed, upon the settlor's death, to whomever she had designated by will or to her heirs and next of kin as upon intestacy (see, e.g., *City Bank Farmers Trust Co.* v. *Miller, supra,* 278 N. Y. at p. 145); the circumstance that the settlor specifically reserved a power to appoint a taker means, if it means anything, that she wanted to affirm and emphasize that she desired to retain control of her property up to the time of her death and to direct its devolution thereafter.

We carry form and the accident of language too far if we conclude that the insertion of such a power can accomplish the transformation of that reversion into a remainder. Certainly, nothing held or said in the *Richardson* case (298 N. Y. 135, *supra*) — wherein the settlor had provided for an intervening contingent remainder in fee to her mother — requires that result. I cannot believe that the court ever meant, in listing the criteria that usually attend the creation of a remainder (pp. 140, 144), to express an inflexible rule or an inexorable juridical formula by the use of which we would be able to derive an automatic answer in all cases. Just as before the *Richardson* case, so today — unless the court by its present decision is overruling what has long been settled law — the interest created depends upon the intention of the settlor as expressed in the trust indenture as a whole. In my view, the language employed in the agreements before us plainly points a reversion: entirely lacking is any " clear expression " to justify changing it into a remainder. (See *Doctor* v. *Hughes, supra,* 225 N. Y., at p. 312.)

Reversion or remainder, however, the volume of litigation on the subject, the diversity of opinion, not to mention the difficulty, frequently, of decision, point the advisability, if not the urgency, of clarifying legislation.

In my opinion, the determination in each case should be reversed.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND and DYE, JJ., concur with BROMLEY, J.; FULD, J., dissents in opinion.

Order and judgment affirmed.