Henry Clay Greenberg, J.
By this proceeding under article 79 of the Civil Practice Act, the surviving cotrustees of an inter vivas trust seek an order (1) settling and allowing their final *61 accounts; (2) directing payment of their statutory commissions; and (3) determining which persons are entitled to receive the corpus of the said trust as a result of the death of the last life beneficiary. No objections have been made to the trustees’ account or the payment of commissions. Accordingly, the sole issue presented relates to the construction of that portion of the trust instrument which disposes of the corpus upon the termination of two successive life estates.
The trust in question is one of two which were established by an agreement dated February 10, 1903, as part of a property settlement incident to a divorce action then pending between the settlor, Pliny Fisk, and his then wife, Mary L. C. Fisk. By that agreement, Pliny Fisk transferred certain securities therein described (of the face value then of $215,000 in each trust) to cotrustees upon two separate trusts for the primary benefit of his then wife, and for the secondary benefit of each of their "two daughters, Edith C. and Dorothy. The trust agreement (subject to provisions for the payment of income not to exceed $5,000 per annum to each daughter after attainment of majority even during their mother’s lifetime) directed the trustees to pay the net income from both of the two trusts to the wife for her entire lifetime. Thus, from 1903 to the wife’s death intestate on February 8,1937, both trusts were administered in solido. The wife was survived by her husband, the settlor, who died on March 30,1939.
Upon the death of the wife, the agreement designated the daughter, Edith 0., as the second life income beneficiary of the trust established under article I, and the daughter, Dorothy, as the second life income beneficiary of the trust established under article II. Each trust similarly provided that upon the death of either daughter (occurring, of course, subsequent to the mother’s death) the entire corpus of the affected trust was to go to her own descendants then surviving, and if none, then to the other daughter, or if she be not then surviving, then to others according to the remaining provisions for disposition of the corpus (set forth in full, infra). One daughter, Dorothy, died on July 10,1957. She had no descendants and consequently the entire principal of the trust under article II was paid over to her sister, Edith O., pursuant to the above-mentioned terms of the trust instrument. Edith C. subsequently died testate on May 17, 1959. She was not survived by any descendant of blood, but she was survived by an adopted son, George Edwin Fisk Adames, of full age and competence. Thus, the second remaining trust terminated and the corpus thereof became distributable under paragraph “Fifth” of “article I ” of the *62 trust instrument. This provision, which the court is now called upon to construe, provides as follows: “ Fifth: Upon the death of both the parties of the second and third parts (the wife, Mary, and daughter, Edith C.), whether the party of the first part shall then be living or not, to pay over the entire principal of said trust fund to the descendants of the party of the third part (Edith G.) then surviving, per stirpes and not per capita, share and share alike, and in the event that there shall then be no descendants of the party of the third part then surviving, then to pay over the entire principal to the party of the fourth part (Dorothy), or if the party of the fourth part be not then surviving, to the descendants of the party of the fourth part then surviving, per stirpes and not per capita, share and share alike; or in case there shall be no persons entitled to said fund under any of the foregoing provisions of this paragraph, then to pay over the entire principal of said fund to the party of the first part, or if he be not living, to such persons as shall then be entitled thereto under any Will of the party of the first part, or in case the party of the first part shall have died intestate, to such persons as shall then under the laws of the State of New York, be entitled thereto as part of the personal estate of the party of the first part.” (Emphasis added.)
As noted above, Edith C. died leaving only an adopted adult son, George Edwin, but no true lineal descendants. Although said adopted son has been made a party to this proceeding, he has not appeared herein nor has he at any time asserted the status of a “ descendant ” of Edith C., nor claimed any right as such to receive the corpus of the trust in question under that portion of paragraph “Fifth” (supra) which designates “ descendants ” of Edith 0. as the first class of remainderman. Moreover, the law seems quite clear that this adopted son has no standing as a “ descendant ’ ’ to assert a right to the corpus. Thus, section 115 of the Domestic Relations Law provides: “ As respects the passing and limitation over of real or personal property dependent under the provisions of any instrument on the foster parent dying without heirs, the foster child is not deemed the child of the foster parent so as to defeat the rights of remainderman. ’ ’ This section was applied to 1 ‘ descendants ’ ’ in Matter of Upjohn (304 N. Y. 366, 378) wherein it was also said: “ The rule in this state declared in New York Life Ins. & Trust Co. v. Viele (161 N. Y. 11, 20), is that the limitation will be construed to designate only those related to the named ancestor by blood if 1 there is nothing to the contrary to be found in the context of the instrument, or in extraneous facts proper to be considered ’. In other words, in the absence of any indi *63 cation of the testator’s intent, it will be assumed that the testator did not envisage adopted children taking under the limitation ” (p. 375). In the case at bar, there is nothing in the trust instrument which can be construed as indicating an intent on the part of the settlor to include subsequently adopted children of his two daughters. The foregoing, coupled with the adopted son’s failure to assert an interest, warrants the holding that he has no interest in the corpus of this trust under the provisions of the trust instrument.
Inasmuch as the daughter, Dorothy, predeceased her sister, Edith C., without descendants surviving, and the settlor had died intestate, that portion of paragraph “ Fifth ” becomes operative which finally provides that the corpus is to go “ to such persons as shall then under the laws of the State of New York, be entitled thereto as part of the personal estate of the party of the first part [the settlor].”
The court is presented with the following constructions of the appearing parties:
I. The first construction is that advanced by the settlor’s four natural children who are the issue of his second marriage to one Eleanor Hepburn Fisk, who died on April 4, 1949. These children are Eleanor Fisk Noall, Gwendolyn Fisk Halleran, Pliny Fisk, Jr., and Wilbur Fisk. They urge that the provision in question established contingent remainders whereby only those distributees of the settlor were to take who were alive upon the termination of the trust in 1959.
II. The second construction contended for, viz., that vested remainders were created in those distributees alive at the settlor’s death, is advanced by the estates of the settlor’s other distributees who died prior to the termination of the trust in 1959. This group consists of the estates of the second wife, Eleanor Hepburn Fisk, and of the two afore-mentioned life beneficiaries, Dorothy and Edith G. The executors also contend that the provision in question must be construed as reserving a reversion to the settlor and that, therefore, the trust corpus ■vested in his distributees, alive at his death, by descent rather than by purchase under the trust instrument. If the construction of either (1) a vested remainder or (2) a reversion should be adopted, a subsidiary question would be presented as to whether the settlor’s second wife can be considered a “ distributee ” since the trust agreement was executed at a time when widoivs were not regarded as next of kin. (See, e.g., Guaranty Trust Co. v. New York Trust Co., 297 N. Y. 45, 51 [1947].)
III. The third construction advanced, that a reversion was created, is by one Samuel E. Witt who asserts a claim against *64 the trust funds based upon an assignment dated February 15, 1930. By this assignment, given by the settlor as collateral for a $35,000 note of the same date, the settlor assigned $35,000. out of the trust funds to be paid ‘1 by the trustees or by me or my heirs, administrators, executors or assigns, out of and from moneys, stocks, bonds and/or other securities constituting or forming a part of said trust fund as shall be the first to be realized pursuant to the terms of the trust agreement, whether by expiration, reversion or release by substitution of an annuity ’ ’. It appears that the settlor was without assets for upwards of 16 years before his death in 1939. Not only did he die intestate, but it further appears that no letters of administration upon his estate were ever issued. (Ibid.) Indeed, in 1934 the settlor unsuccessfully sought to set aside these trusts, presumably because of his then poor financial condition. To adopt the construction of a reversion would present a subsidiary question as to the validity and effect of the settlor’s assignment.
Ordinarily, the words of grant in the context of this instrument would clearly create a remainder interest (cf. Whittemore v. Equitable Trust Co., 250 N. Y. 298, 302 [1929]). However, the fact that the designated remaindermen here are the settlor’s own next of kin poses a question, born of the feudal doctrine of worthier title, as to whether the instrument sufficiently discloses an intent to create a remainder in the settlor’s heirs rather than a reversion in the settlor which heirs would take by descent rather than by purchase under the trust instrument. For it is a rule of construction which, broadly stated, holds that a grant to the settlor’s heirs results in a reversion. The proper conclusion depends solely upon the sufficiency of the settlor’s disclosed intent measured largely by the presence or absence of certain factors heretofore judicially considered (Matter of Burchell, 299 N. Y. 351, 360-361 [1949]). While the parties agree upon this broad proposition, they are apart upon the force of the indicated rule of construction and the extent to which a contrary intent must be manifested in order for a remainder to result. The rule to be applied has slowly evolved over a half century. Its true meaning and application can only be ascertained by a careful analysis of some of the cases with a due regard for their facts, as well as the judicial expressions.
At common law, the grant of a fee, limited upon a life estate, to the grantor’s heirs resulted in a reversion in the grantor (Richardson v. Richardson, 298 N. Y. 135, 138 [1948]; Doctor v. Hughes, 225 N. Y. 305, 310 [1919]). The heirs so designated merely had an expectancy, not an estate, which could be defeated by deed or will (Doctor v. Hughes, supra). This was a strict *65 rule of property, not of construction, and the direction to convey to heirs was disregarded (Doctor v. Hughes, supra; Richardson v. Richardson, supra; Matter of Burchell, 299 N. Y. 351, 358 [1949], supra). “The doctrine had its origin in the feudal custom of awarding certain valuable incidents to the overlord upon the descent of property held by a feoffee. These incidents did not accrue if the property was acquired through purchase, and, in order to obviate this means of curtailing the payment of incidents, title by descent was declared to be more worthy than title by purchase.” (Matter of Burchell, supra, p. 358.) But it should be noted that “ Even at common law, a distinction was taken between grants to the heirs as such, and grants where the reference to heirs was a mere descriptio personarían ”. (Doctor v. Hughes, supra, p. 312.)
The departure from this doctrine was expressed by Judge Cardozo in the early leading case of Doctor v. Hughes (supra). There the settlor conveyed certain real property in trust for his own benefit.during his life, and directed that upon his death the trustee was to “ convey the said premises (if not sold) to the heirs at law of the party of the first part [settlor] ”, The trustee was directed to pay the settlor a yearly income of at least $1,500, and was also empowered to pay two existing mortgages and other debts, as well as to mortgage and even sell the property. After reviewing the common-law doctrine referred to above, Judge Cardozo wrote: 1 ‘ But at least the ancient rule survives to this extent, that to transform into a remainder what would ordinarily be a reversion, the intention to work the transformation must be clearly expressed ” (p. 312, emphasis added). Observing that there was no adequate disclosure of an intent to vest the heirs with an indefeasible interest, and that the trustee was empowered to destroy the trust, the court held that, a reversion resulted in the settlor and that during his life the settlor’s daughter had no interest against which judgment creditors could levy. In the light of succeeding cases, it is important to note that here (1) the trust was for the settlor's exclusive benefit; (2) the trustee was empowered to invade and even to convey the entire corpus; (3) there were no antecedent remainders; (4) there was no intent to vary the ordinary line of succession; (5) there was no reservation of a power of testamentary disposition, and (6) there Avas no full scheme of disposition of the trust property. It should be noted also that this case represents only the early stage of the departure from the strict rule of property, and the test applied by Judge Cardozo, that the settlor’s intent must be “ clearly expressed ”, was restricted in later cases.
*66 The “ clear expression ” test of Doctor v. Hughes seems to have been substantially limited in Whittemore v. Equitable Trust Co. (250 N. Y. 298 [1929], supra). In that case, heavily relied upon by the instant settlor’s four surviving children, three settlors transferred certain bonds in trust to a corporate trustee for the benefit of two successive life income beneficiaries. Upon the death of both, the trustees were directed to return the corpus to the settlors in equal parts. If, however, any of the settlors should be dead at the termination of the trust, his share of the corpus was to be distributed to such persons as he had designated in his will, or, if he died intestate, “ to such person or persons, and in such shares, interests and proportions, as the same would have been distributable if such deceased Settlor had been the owner thereof at the time of his or her death and had died intestate.” After the decease of one beneficiary, the remaining beneficiary joined with the three settlors to revoke the trust. Two of the settlors were married and had minor children. The trustee objected on the ground that all persons beneficially interested had not consented to the revocation (Personal Property Law, § 23) since, it was claimed, the trust instrument vested a remainder in the settlor’s heirs. The Court of Appeals unanimously agreed with the trustee. Great emphasis was placed by the court upon the facts that the settlors did not reserve the power to transfer or assign, and, particularly, that the settlors made a full and formal distribution of property. Distinguishing Doctor v. Hughes, Judge Crane wrote: “ But that is not this case. Here we have something more. The settlor, as above stated, makes rather full and formal disposition of the principal of the trust estate in case he dies before the life beneficiary. The words used, as already explained, indicate an intention to give a remainder to the spouse and children, as the case may be, subject to change by the settlor’s will. The creator of the trust reserves power of disposition only by will; he does something more than merely set up a trust for a life beneficiary; he disposes of the property at the termination of the life interests in case of his previous death” (p. 303). Throughout the opinion it is abundantly clear that Judge Crane (Avith whom Chief Judge Cardozo concurred) was concerned only with the settlor’s intent. Thus, he queried: “ Why should not this trust agreement be interpreted as it reads'? What reason is there for giving it a legal construction just the opposite to its natural meaning? ” (p. 301). Commenting that a similar grant to the heirs of the life beneficiary would create a remainder, Judge Crane stated that the same rule should apply to á grant to the settlor’s heirs (p. 302). And he wrote, very s.ig *67 nificantly: “ This is all a matter of intention. The creator of a trust can do as he pleases with his property and the courts look to his words to guide them in decisions. The directions come from the owner of the property and not from the law, unless there be some specific statute to be enforced. To determine, therefore, whether the settlor of the trust in this case simply created a life interest and nothing more, reserving to himself the balance of the interest in the property, we looked to Ms intention, as expressed in the [trust] instrument ” (pp. 302-303, emphasis added). If the “clear expression” test mentioned in Doctor v. Hughes was intended to impose an unusually weighty burden to establish an intent to create a remainder, the Whittemore case clearly eases that burden. Whittemore discloses a judicial disposition to effectuate the words of the settlor according to their usual meaning, uninhibited by any rule which would do violence to such intent. Under Whittemore, the intent to create a remainder need only be “sufficiently” expressed, and the contrary rule of construction appears to be inoperative unless there is a real doubt as to the intent. Because of the facts in the case at bar, it is important to note that the instrument in Whittemore specifically provided for a return to the settlors of the trust principal upon termination of the trust.
Subsequent to Whittemore, the Court of Appeals affirmed, without opinion, the holding of the Appellate Division, First Department, which found a reversion was created in Berlenbach v. Chemical Bank & Trust Co. (235 App. Div. 170, affd. 260 N. Y. 539 [1932]). There, the plaintiff settlor established a trust for his own benefit for life but not to exceed 20 years. At the end of 20 years, the corpus was to return to the settlor. However, in the event of his death prior to the expiration of 20 years, the corpus was to be paid to those persons named in the settlor’s will; or, if none be so appointed, the corpus was to pass under the residuary clause of his will; or, if he died intestate, then “ to the persons entitled to receive his personal property in case of intestacy” (235 App. Div. 171). About five years after the trust was established, the settlor attempted unilaterally to revoke the trust although he then had a wife and son. The Appellate Division, holding that a reversion was created and the revocation effective, laid great emphasis upon the fact that the trust was established for the settlor’s own benefit and that it clearly was not intended to create present rights in anyone else. The court also stressed the fact that the trustee was without power to change the investments constituting the trust principal without the settlor’s consent. Many years later, the Court of Appeals gave as its reason for affirming the Appellate Division *68 in Berlenbach the circumstance that “ There another performer (a professional boxer) was involved who had set up a trust primarily for his own benefit, he being the only named beneficiary, with provision for the return of the principal to him at the expiration of a twenty-year period. In addition, the trustee was not to be permitted to sell or exchange the securities or invest or reinvest the proceeds of a sale thereof without the settlor’s consent ”. (Richardson v. Richardson, 298 N. Y. 135, 144 [1948], supra.) Although the Appellate Division stated that an intent to create a remainder must be supported by “ unambiguous and unequivocal language ” (235 App. Div. 173), the Court of Appeals’ affirmance without opinion cannot be interpreted as adopting that language in view of Judge Crane’s earlier opinion in Whittemore as well as later cases, particularly Matter of Burchell (infra).
In Richardson v. Richardson (298 N. Y. 135 [1948], supra) Judge Conway (later Chief Judge) reviewed all the cases in a manner later described by Judge Bromley as “ admirable ”. (Matter of Burchell, 299 N. Y. 351, 359 [1949], supra.) In Richardson, the settlor created a trust of securities with the direction that the income should go to her for her life. Upon her death, the trustees were directed to pay over the corpus and undistributed income to those persons designated in her will or, failing such appointment, to the settlor’s mother if then surviving or, if she should not survive, ‘ ‘ then said principal shall go to such persons as would be entitled to the same under the intestacy laws of the State of New York ”, The settlor also had the power to name a substitute trustee, a fact to bear in mind because of the facts of the instant case. The settlor’s mother predeceased the settlor who thereafter served a notice revoking the trust. At the time of the attempt to revoke, the settlor had a husband, one adult child, and two minor children. The trustee objected that the settlor was not the sole person beneficially interested and could not, therefore, revoke the trust. The Court of Appeals held the revocation inoperative. After reviewing the cases, Judge Conway said (pp. 139-140):
“ Thus direction to transfer trust property to one’s next of kin is insufficient in and of itself to create a remainder. There must be additional factors, i.e., other indications of intention in order that there may be found ‘ sufficient ’ or ‘ clear expression ’ of intention on the part of the settlor to create a remainder to his next of kin.
‘ ‘ In our decisions we have attached considerable importance to at least three factors which are present in- the instant case, viz.: (1) that the settlor has made a full and formal disposition *69 of the corpus of the estate, i.e., disposed of the principal on several contingencies other than having it revert to himself, (2) that the settlor has made no reservation of a power to grant or assign an interest in the property in his lifetime, and (3) that he has reserved only a testamentary power of appointment.”
And in holding a remainder was created in Richardson, he wrote (p. 144): “To summarize, therefore, we believe the settlor evidenced her intention to give a remainder to her next of kin because she (1) made a full and formal disposition of the principal of the trust property, (2) made no reservation of a power to grant or assign an interest in the property during her lifetime, (3) surrendered all control over the trust property except the power to make testamentary disposition thereof and the right to appoint a substitute trustee, and (4) made no provision for ■ the return of any part of the principal to herself during her lifetime. ’ ’ Thus, the court in Richardson attempted to lay down definite criteria which, when present, will be deemed sufficient to establish an intent to create a remainder. And despite the reference to the “ clear expression ” test, the force of the rule of construction favoring a reversion seems to have been limited as it had been previously in Whittemore. As the court said: “ It is now settled that the solution of the problem presented is dependent upon the intention of the settlor as expressed in the trust agreement” (p. 138). And the true utility of the rule of construction referred to seems to have been essentially confined to a bare direction to transfer trust property to one’s next of kin (p. 139). The presence of the factors enumerated is sufficient to supply the intent to create a remainder with the implicit qualification, of course, that such a result must be in accord with the trust instrument as a whole.
The last case of significance decided by the Court of Appeals was Matter of Burchell (299 N. Y. 351 [1949], supra). There the settlor established a trust whereby she was to receive the income for her life and upon her death the principal was to go to the persons named in her will, or failing such testamentary disposition, to such persons as would be entitled thereto if she had died intestate. The settlor also reserved the power to join in (1) the execution of any conveyance, mortgage or lease over three years, and (2) the appointment of successor trustees. In holding that a remainder was created, the court placed great emphasis on the fact that the sole control retained by the settlor was by a testamentary power of appointment (p. 360). The court stated: ‘ ‘ The fact that the trust agreement reserved a power of appointment is evidence that the settlor believed she had created an interest in the property on the part of others *70 and reserved the power in order to defeat that interest or to postpone until a later date the naming of specific takers ”. In so holding, the court stated that the reservation of a veto power over certain conveyances did not indicate a contrary intent where the trustees are clothed with full power to invest and reinvest. Regarding the rule of construction in question, Judge Bbomley wrote: “ It is clear from the cases in this State since Doctor v. Hughes (225 N. Y. 305, supra), as admirably analyzed in Richardson v. Richardson, (supra), that, despite the language in that opinion that a reversion exists unless there is clear evidence to the contrary, the rule has been less limited in application. Where a clear intent exists, there is no problem in construing the instrument, since the doctrine no longer exists as a rule of property. But where the grantor’s intent is not expressed in unmistakable language, the rule comes into play. Then we look to the instrument for those indicia deemed significant in arriving at the intent of the grantor ” (pp. 359-360). Stating (p. 360) that “ Evidence of intent need not be overwhelming in order to allow the remainder to stand ”, Judge Bbomley went on to say: “ In analyzing an instrument and attempting to explore the almost ephemeral qualities which go to prove the necessary intent, many single factors may be considered. Some considered significant in one case may be deemed minimal in another, since their effect may be counteracted by the presence of other factors. It is impossible to set up absolute criteria to serve as a measuring standard for all cases. In the last analysis, the ultimate determination rests on the particular instrument under consideration, aided by the rule which has grown out of the old common-law doctrine and developed over a long line of cases as a rule which allows the language of the instrument creating a remainder to take effect provided some additional evidence pointing the intent of the grantor is present to buttress the language which would create the remainder ” (p. 361, emphasis added).
The Burchell case gives us, in light of predecessor cases, a rather clear approach which so far as it can be expressed as a rule, may be summarized thusly: Where the language of the trust instrument creates what would normally be a remainder, it will be given effect if there are other evidences of intent to support that result. Such other evidence need not establish the intent independently, but merely “ buttress ” the language employed in the trust instrument. It need not be “ overwhelming ”, but merely “ sufficiently ” corroborative. Only in the absence of such supporting indicia does the rule of construction become operative and result in a reversion. With respect to *71 the significance to be attached to the various factors summarized in Richardson and relied upon in the cases discussed above, Judge Bromley’s observation in Burchell is important to stress: ‘ ‘ Some considered significant in one case may be deemed minimal in another, since their effect may be counteracted by the presence of other factors. It is impossible to set up absolute criteria to serve as a measuring standard for all cases ” (p. 361).
Under the foregoing cases, the conclusion seems inescapable that the settlor, Pliny Fisk, intended to create a remainder. To begin, the trust instrument employs language which ordinarily operates to create a remainder interest. Our inquiry, then, is whether there is sufficient other evidence to buttress that language and allow it to take effect.
The trust instrument contains all of the factors deemed significant in the cited cases as supporting the intent to create a remainder. (A) The settlor retained no power to sell, assign or otherwise disturb or affect the corpus during his life. The trustees were vested with complete power to invest and reinvest the trust property. (B) The only power of disposition retained by the settlor was by testamentary appointment. And, indeed, even that power could be defeated by the occurrence of any of several specified contingencies, viz., (1) the survival of descendants of Edith, which could reasonably have included settlor’s grandchildren or even great-grandchildren; (2) the survival of Edith’s sister, Dorothy; and (3) the survival of descendants of Dorothy, which again could reasonably have included grandchildren or even great-grandchildren of the settlor. (0) The trust was created for the sole benefit of the settlor’s then wife and two daughters. He derived no benefit whatever therefrom. Indeed, the express purpose of the trust was to provide support and maintenance for the wife and daughters. (D) Most importantly, it cannot be questioned that this instrument very clearly constitutes a full and formal disposition of the trust property. This factor alone is of great significance. (See, e.g., Whittemore v. Equitable Trust Co., supra; Richardson v. Richardson, supra; Matter of Ryan, 284 App. Div. 102 [1st Dept., 1954]; Fish v. Chemical Bank & Trust Co., 270 App. Div. 251 [1st Dept., 1945].) The trust was to span two generations. It may be noted, as the court is informed, that at the time the trusts were established the settlor’s daughters, Dorothy and Edith, were 16 and 17 years of age, respectively. The settlor meticulously provided for alternative disposition of the corpus upon the termination of the trust estates. Upon the failure of three designated classes of contingent remaindermen, the corpus was to go to the settlor in the unlikely event he should survive. The further provision *72 for the settlor’s next of kin was an integral part of this complete scheme for disposition of corpus. The manifest purpose was to make a present disposition of the corpus upon termination of the trust, subject only to the testamentary power of appointment.
Although these factors do not ipso facto conclude the question of the settlor’s intent in all cases (Matter of Burchell, supra, p. 361), they certainly do in this case, particularly in light of the instrument read as a whole, the circumstances surrounding its execution, and other factors. The preamble of the trust instrument, after referring to the wife’s life estate, recites “ the ultimate disposition of such fund to be as hereinafter provided.” (Agreement, p. 2, emphasis added.) Such a recital, though ambiguous when considered in vacuo, acquires some significance when taken together with the painstakingly complete provisions thereafter for disposition of the trust corpus. It lends additional support to the conclusion that by this instrument the settlor intended to make final disposition of the corpus* and if all the antecedent conditioned grants should fail, his next of kin (whenever ascertained) should take under the instrument and not by descent.
Another factor arises out of the unreasonable result which would arise if a reversion were held. The provision for next of kin could become operative only after the death of both daughters without a single surviving descendant between them. To hold a reversion was created would require us to attribute to the settlor an intent in 1903 to benefit persons, not even of remote lineal descent — complete strangers — equally with such other next of kin as he might acquire, and did acquire, during what then must have seemed many years to come. Furthermore, such a holding would conflict with the provision which, specifically applied, prevented the daughter, Dorothy, from taking the corpus of Edith’s trust if she predeceased her. And finally, such a conclusion would require us to attribute an intent to the settlor that a substantial portion of the trust property should go into estates, one of which might have long since been closed, and be subjected to additional expenses and possible additional taxes. Such intent cannot be attributed to the settlor who was so scrupulous about the disposition of the corpus and who had made generous provisions for his daughters and their descendants. It seems clear that he intended to benefit no one claiming through his deceased daughters other than their surviving descendants.
That the settlor did not intend to benefit his daughters’ estates is supported by other evidence indicating a clear purpose *73 Lo vary the ordinary line of intestate succession. Such a purpose not only supports an intent to create a remainder (Richardson v. Richardson, supra; Schoellkopf v. Marine Trust Co., 267 N. Y. 358), but also requires the conclusion here that the remainder is contingent and not vested. In disposing of the corpus, the settlor specifically imposes the condition of survivorship upon the descendants of the two daughters. Those provisions are followed by a semicolon, after which follows: “ or in case there shall be no persons entitled to said fund under any of the foregoing provisions of this paragraph, then to pay over the entire principal of said fund to the party of the first part, or if he be not living, to such persons as shall then be entitled thereto under any Will of the party of the first part, or in case the party of the first part shall have died intestate, to such persons as shall then under the laws of the State of New York, be entitled thereto as part of the personal estate of the party of the first part.” (Emphasis added.) In the first place, the disposition to next of kin is made as an integral part of an exhaustive attempt to vest the trust principal in persons living at the termination of the trust. Indeed, the settlor’s own interest is contingent upon his survivorship. Secondly, a careful scrutiny of the words employed clearly indicates a purpose to determine the members of the class entitled to take not as of the date of the testator’s death, but at the death of the second life beneficiary. The use of the word “ then ” obviously refers to the end of the trust. But that is not so indicative as the settlor’s use of the word “ entitled”. To paraphrase, the grant is to those next of kin “ then entitled ”. The settlor uses the word “ entitled ” previously to refer to classes who would be eligible to receive the corpus only if they survived the trust. Thus, he provided that he or his next of kin might take only “ in ease there shall be no persons entitled to said fund under any of the foregoing provisions.” (Emphasis added.) Survivorship was at the core of their entitlements. Thus, he clearly refers to next of kin who survive the trust, thereby imposing the same condition previously imposed upon all other remaindermen as well as himself. Moreover, although the trust was to span many years and he himself was relatively young, he specified that the Laws of New York would govern although his domicile well may have changed thereafter. This, also, is a factor pointing to a contingent interest (Ming v. Chase Nat. Bank, 263 App. Div. 141 [1st Dept., 1941]). In addition to the foregoing specific and very clear indications of intent to vary the ordinary line of intestate succession, the finding of a contingent remainder is further bolstered by a rule of construction applicable here where there is a *74 mere direction to pay over to a class of persons, without other words of present gift, and the direction is to take effect only upon the happening of several uncertain events, viz., the failure of previous contingent interests. A direction merely to pay over under such circumstances, even in the absence of an intent otherwise expressed, is construed as making a gift to vest only when the time for distribution arises (New York Life Ins. Co. v. Winthrop, 237 N. Y. 93, 103 [1923]; Salter v. Drowne, 205 N. Y. 204, 215, 217 [1912]; Matter of Crane, 164 N. Y. 71, 76 [1900] ; Matter of Sayre, 1 AD 2d 475 [4th Dept., 1956], affd. 2 N Y 2d 929 [1957]; Matter of Fishel, 167 Misc. 145 [Surrogate’s Ct., 1938], affd. 256 App. Div. 915 [1st Dept.], motion for leave to appeal denied 280 N. Y. 851 [1939]; Matter of Askew, 7 Misc 2d 561 [Queens County Surrogate’s Ct., 1957]). The rule was well stated by Surrogate Foley in Matter of Fishel (supra, p. 146): “ The gift of the remainder to the next of kin in this estate is substitutional. The primary gift is to a class, the members of which are to be determined at the termination of the trust. It is only on the non-existence of the members of this class that the alternative gift to the next of kin is to take effect. The primary gift is clearly contingent. The secondary gift is likewise contingent.” Salter v. Drowne (supra), the leading case, says: “ If, instead of holding as we do in this case that the intent of the testatrix as shown by her will was to postpone any possible vesting of the corpus of the trusts until the death of her daughter, we were in doubt about her intention, the rule to be applied in construing the will in this state is that where a gift arises from a direction to divide or convey the trust property among a specified class of persons and such division or conveyance is contingent and dependent upon the happening of one or more uncertain events the gift does not vest until the time for distribution or conveyance arises ” (p. 215).
All the foregoing factors considered together in the whole context of the instrument clearly establish that the settlor intended to grant a remainder only to those next of kin who survived the trust. The only persons here answering that description are his four natural children by his second wife, and each is entitled to an equal share of the corpus.
On the question of whether the remainders were vested or contingent, it is argued generally that the law favors the vesting of estates. This is true, but it is only a rule of construction which “ cannot be applied when it is found that by so doing the intention of the testator [here, settlor] would not be carried out.” (Salter v. Drowne, supra, p. 212.) This settlor’s intention to postpone vesting was clearly established. It is argued *75 that the use of the word “ then ” ordinarily relates only to the time of enjoyment, but does not operate to defer vesting. Matter of Krooss (302 N. Y. 424 [1951]), cited in support of this proposition, is not in point. Obviously, the significance of the word “then” depends upon its use in the particular instrument. Here, the word “then” is used together with the word “entitled” (discussed, supra). Moreover, it is only one of many factors. Other cases cited do not support a vested remainder here (see, e.g., Matter of Askew, 7 Misc 2d 561, supra [Queens County Surrogate’s Ct., 1957]; Matter of Willets, 8 Misc 2d 866 [Nassau County Surrogate’s Ct., 1957]; Matter of Baumiller, 155 Misc. 815 [New York County Surrogate’s Ct., 1935]; Matter of Slavens, 4 Misc 2d 82 [New York County Surrogate’s Ct., 1956]).
Due consideration has, of course, been given to the factors stressed by some of the parties as pointing to a reversion or vested remainder. However significant their presence might be in another instrument, it is clear that their potential force is entirely lost in light of the numerous other indications here clearly expressing a purpose to give the corpus only to those next of kin of the settlor who might be alive upon termination of the trust. The entirety of the trust instrument requires this result which, in my opinion, is the most equitable one. Accordingly, the trust principal and accumulated income should be distributed equally among Pliny Fisk’s four surviving children, viz., Eleanor Fisk Noall, Gwendolyn Fisk Haller an, Pliny Fisk, Jr., and Wilbur Fisk. No objection having been taken to the trustees’ account, it is approved.