Gabrielli, J.
(dissenting). The question here involves the enforceability of an agreement by the donee of a postponed *216 power of appointment under an inter vivas trust created by himself, with himself as lifetime beneficiary, to exercise his power by will in a certain way. EPTL 10-5.3 prohibits a contract to make an appointment where the power is not presently exercisable. We agree with the Appellate Division majority that EPTL 10-5.3 was not intended to apply in this situation.
Decedent married his first wife Muriel in 1931. Their son, objectant herein, was born in 1934. Subsequently the couple separated and in 1942 they entered into a separation agreement in which decedent promised certain monetary support to objectant, which was never given. Subsequent to a divorce, and in November, 1943 Muriel obtained a judgment on behalf of objectant for the unpaid support. In February, 1944, decedent and Muriel having remarried others, an agreement was made between them, joined in by their respective spouses, which provided that Muriel and her new husband Herman Maier would hold decedent harmless from making any further child support payments and that Herman Maier would adopt objectant. In return, decedent agreed that he would exércise powers of appointment, of which he was donee under two trusts, in his will so as to procure for his son a share of the principal of those trusts equal to that received by any of decedent’s children by his second marriage, or, if there were no more children, the principal would be divided equally between objectant and his surviving wife. It was expressed in the agreement that it was entered into for the purpose of amicably adjusting differences which had arisen between the parties.
Pursuant to the agreement and on the same day the agreement was concluded, decedent executed a will in which he utilized his powers of appointment in favor of objectant as provided for in the contract. Simultaneously, Herman Maier finalized his adoption of objectant.
Twenty years thereafter, and in September, 1964, decedent made a new will in which he exercised his powers of appointment in favor of his estate. His will then disposed of his entire estate to his second wife and a daughter born of that marriage. In the present proceeding, decedent having died in 1968 and the executor having made application to settle the account, objectant seeks to enforce his claim to the estate as third-party beneficiary of the 1944 agreement. *217 Of the two trusts in question one was set up in the will of decedent’s mother executed in 1925. A corpus of $25,000 was to be held in trust for decedent’s lifetime to furnish him income and was to be disposed of by decedent in his last will as he should see fit. The second trust was set up by decedent in 1927 with his own funds amounting to $75,000. He was to be lifetime income beneficiary and reserved the power to appoint the corpus in his last will. At the time decedent’s 1964 will was admitted to probate in 1968 the assets in the testamentary trust created by decedent’s mother amounted to $15,186.53. The assets in the inter vivas trust created by decedent were worth $129,385.58. Objectant claimed entitlement to one third of each trust corpus since, under the 1944 agreement, decedent’s surviving wife and daughter would each be due one third.
The Surrogate ruled that EPTL 10-5.3 made the 1944 agreement unenforceable with respect to both trusts. That statute states: ‘ ‘ Contract to appoint; power not presently exercisable, (a) The donee of a power of appointment which is not presently exercisable, or of a postponed power which has not become exercisable, cannot contract to make an appointment. Such, a contract, if made, cannot be the basis of an action for specific performance or damages, but the promise can obtain restitution of the value given by him for the promise unless the donee has exercised the power pursuant to the contract. ’[1]
*218 The majority opinion in the Appellate Division affirmed the Surrogate’s holding insofar as the mother’s testamentary trust was concerned, a result with which we are in accord, but' held . that EPTL 10-5.3 did not apply to the inter vivas trust where the donee of the power is also the donor, a result which also meets with our approval.
The definitive appraisal of the sort of thing sought to be guarded against is found in Farmers’ Loan & Trust Co. v. Mortimer (219 N. Y. 290). There, John Mortimer, the béneficiary of a trust created in his mother’s will, was given a general power of appointment to be exercised in his own will. The donee procured a loan on his promise to exercise the power of appointment in favor of the creditor and he made a will to that effect. Later, however, he made a new will in which he appointed in favor of his children. Judge Cabdozo held the agreement with the creditor to be unenforceable. The exercise of the power, he said, was to represent the final judgment of the donee as asserted in his final will. “ Up to the last moment of his life he was to have the power to deal with the share as he thought best [citation]. To permit him to bargain that right away would be to defeat the purpose of the donor. Her command was that her property should go to her son’s issue unless at the end of his life it remained his will that it go elsewhere. It has not remained his will that it go elsewhere; and his earlier contract cannot nullify the expression of his final purpose ” (219 N. Y., at pp. 293, 294). . Furthermore, allowing the donee to bargain with the power would frustrate statutory provisions that a power of appointment by will may not be exercised by grant (Real Property Law, former §§ 167, 168).' After discussing the inapplicable case where a contract to make a will of one’s own estate is enforceable by imposition of a trust against the property in the estate, Judge Cabdozo significantly states: “ But in this case the subject-matter of the power is not the property of the promisor. It is the property of his mother. The promisor was not the owner of any legal estate. He was the beneficiary of a trust. In such circumstances a power of appointment does not involve that absolute power of disposition which is equivalent to a fee [citation]'. Those who tahe under this power have received nothing that was the property of John Mortimer.” (219 N. Y, at p. 295; emphasis supplied.)
*219 In the instant case, of course, those who take under the power created in the inter vivas trust receive what is, was and always has been decedent’s property. The rationale in Mortimer, from . which EPTL 10-5.3 draws meaning, was constructed to protect ■ the intent of the donor of the power against rash utilization of the power by the donee. As stated by Justice Shapiko in his opinion in the Appellate Division (p. 278), “ Since the power of appointment was reserved by the creator of the trust to himself, can it be seriously contended that his purposeful action as donee in contracting to exercise the power in the objectant’s behalf was at the same time defeating his intent as the donor of the power? ”
That this sort of inter vivas trust would have been excepted out of EPTL 10-5.3 but for apparent legislative oversight is illustrated by the provision in EPTL 10-7.4 (subd. [a], par. [1]) that property covered by a general power of appointment is reachable by the donee’s creditors where the power was created by the donee in favor of himself. The fact the Legislature left such self-created powers vulnerable to the donee’s creditors renders it inconceivable that it intended to immunize situations where the donor-donee would choose to bargain with his power.
If it could be said that this inter vivas trust was the sort over which decedent had, in effect, a fee interest contemplating a reversion of the corpus, then, of course, there would be little sense in seriously considering a contention that EPTL 10-5.3 should be applicable. As Scott puts it: u At any rate, regardless of his wisdom or folly in creating the trust, since nobody but he has at any time any beneficial interest in the property, he should be permitted to do as he likes with it, if he is not under a legal incapacity.” (4 Scott, Trusts [3d ed.], § 339, p. 2699). In the subject inter vivas trust, however, the corpus, in default of the exercise of the power, was to go to decedent’s “ issue ”, and if no issue, then to his “ next of kin.” There is authority that a contingent gift to “ issue ”, even where there is a general power of appointment (or, because of such power), creates a remainder beneficiary or beneficiaries whose consent would be needed were the settlor-donee-life beneficiary of a mind to conclude the trust during his lifetime (op. cit., § 127.1, *220 pp. 986-987). Other cases subject this construction to some doubt.[2]
It seems to us clear that in Mortimer Judge Cardozo’s concern was that the holder of a power of appointment over property given him by another should not be allowed to. defeat the donor’s interest by his ability to bargain with the power. Even assuming there exists a contingent remainder interest upon failure to appoint, a question we need not decide, the Legislature would have had no discernible reason for preventing a donor-donee from dealing with the power however he saw fit, especially when, as was actually accomplished in this case, he can appoint the corpus to his estate and actually effect a reversion. Even if it be deemed that decedent did not have interest sufficient to revoke and that there was a remainder interest, such fact should not alter the use which could be made of the power of appointment. Certainly remaindermen contingent upon default in the exercise of the power should have no say as to how the power is exercised by the donor-donee. Thus, it could not have been with their interests in mind that EPTL 10-5.3 was enacted. Bather, the statute was enacted to protect the interests of the settlor-donor. So, where the settlor-donor and donee are the same the statute should have no application.
The order should be affirmed.
. Chief Judge Fuld and Judges Breitel and Jasen concur with Judge Jones; Judge Gabrielli dissents and votes to affirm in a separate opinion in which Judges Burke and Wachtler concur.
*221 Order reversed, with costs to all parties appearing separately and filing separate briefs payable out of the estate, and matter remitted to Surrogate’s Court, Queens County, for further proceedings in accordance with the opinion herein.

. The Surrogate correctly held that objectant’s cases such as Forman v. Forman (17 N Y 2d 274) and Matter of Granwell (20 N Y 2d 91), which, hold that a third-party beneficiary under a separation agreement may sue to enforce his rights, would not apply where the agreement itself is so directly and totally outlawed by statute. But see Ferro v. Bologna (31 N Y 2d 30) where the separation agreement relieved the husband of the obligation to support his wife (in contravention of General Obligations Law, § 5-311) in return for which he promised to provide insurance benefits for their two children. ■In a suit by the children to enforce their rights to insurance proceeds we held that although the agreement would not have prevented the wife from seeking support, the.insurance provision was severable and the children’s rights became vested when the husband named them beneficiaries under his policies, regardless of the fact he later changed the beneficiaries to his sister and her husband. The instant case obviously differs since the statute in question renders unenforceable the very agreement sought to be enforced whereas in Ferro there was no statutory restriction on an insured’s right to contract away his right to name beneficiaries under his policies.

. The existence of a testamentary power of appointment, curiously, has been an aid to finding a remainder rather than a reversion since, had settlor intended a reversion the reservation of the power would be superfious (Matter of Burchett, 299 N. Y. 351, 360 and see then Judge Fuld’s dissent; Richardson v. Richardson, 298 N. Y. 135, 143). Cases interpreting intention through words used in the trust instrument in .trusts created since the amendment to section 23 of the Personal Property Law (now EPTL 7-1.9) in 1951 are in some conflict as to whether disposition to heirs, next of kin, children,' issue, etc., should be treated as remainders or reversions. Compare Matter of Warren v. Cropsey (29 A D 2d 290) on the one hand with' Matter of Bodge (25 N Y 2d 273) and Matter of Fletcher (57 Misc 2d 554) on the other.